J. L. LOVEJOY AND ANOTHER v. ELIZABETH ROBERTS AND OTHERS.

1. If, in a sale of land on deferred payments, the vendor misrepresented to the vendee the quantity, quality, or value of the land, the vendee may retain the land and have a rebate from the price he was induced to promise ; and in a suit by the vendee for a specific performance, a court of equity can allow such rebate from the purchase money, and still decree the title to the vendee.

2. R. held a title bond for a tract of land, and sold the land by verbal contract to L., in part for cash and in part on a deferred payment. Afterwards, R. sued L. before a justice of the peace, for the deferred payment, and L. pleaded the statute of frauds, and also reconvened against R., alleging that the latter fraudulently misrepresented the locality and quality of the land, and had thus induced him, L., to purchase different and less valuable land than that represented to him by R. ; and that the cash payment was a full equivalent for the land imposed upon him by R. To obviate the defense of the statute of frauds, R., at the trial, tendered to L. the title bond and an assignment of it in writing, as an absolute conveyance of the land; and L.

Statement of the case.

accepted the bond and assignment. The judgment of the justice was in favor of L., and was never appealed from by R. *Held*, that R. was estopped by his tender and delivery of the title bond from subsequently claiming the land as against L., on account of the latter's non-payment of the deferred purchase money. *Held further*, (on re-hearing), that the judgment of the justice was, in effect, that the cash payment made by L. was all that R. was entitled to receive, and that the misrepresentations of R. exonerated L. of the deferred payment then sued for; and as the justice's judgment remains in force and unreversed, L. is not in default, and in his present suit for specific performance is entitled, as against R., to a decree for the legal title to the land.

3. (On re-hearing.) The principles of law respecting the specific performance of contracts, announced in Roberts v. Lovejoy, 25 Texas Sup., 437, and 28 Texas, 641, are fully recognized and approved; but Chief Justice Wheeler's opinion in the former case should be considered in connection with his views on the same subject, expressed in the case of Roeder v. Robson, 20 Texas, 765. The facts of the present cause, however, as now disclosed, subject it to the control of the principles expounded by Chief Justice Hemphill, in Estes v. Browning, 11 Texas, 237.

APPEAL from Collin. Tried below before the Hon. Hardin Hart.

The present is the third appearance of this cause in the Supreme Court. The former appeals are reported in 25 Texas Supplement, and 28 Texas. The judgment now appealed from was rendered in the District Court of Collin county, at its September term, 1868. This third appeal came to trial in the Supreme Court in April, 1871, and in the first of the opinions now reported the judgment was then reversed and the cause remanded. A rehearing, however, was granted on the application of the appellees; and in April, 1872, the second and more elaborate opinion was delivered.

These opinions, in connection with the former reports of the cause, already referred to, disclose the material facts.

A brief seems to have been filed for the appellants, but it has not reached the reporter's hands.

*John C. Easton*, for the appellees.—I desire, first, to review the plaintiffs' brief, mainly to correct some errors in fact as to the former appeals in this case, as well as to correct some errors and misrepresentations of facts in the case now before the court.

1. Plaintiffs complain that the former courts have not been properly informed as to the merits of the case; and that Justice Wheeler, "who delivered the opinion of the court upon the first hearing, must have contented himself with a superficial examination of the facts," etc. Plaintiffs' attorneys are peculiarly unfortunate or unguarded in this remark, for it was upon the facts alone that Judge Wheeler reversed this case and deemed it unnecessary to pass any decision on the law arising from the charge of the court. (See case reported in 25 Sup. Texas Rep., page 437.)

The remark, also, that "appellant has never been heretofore represented in this court," is largely contradicted by the extensive brief, which is reported in 28 Texas, page 641, when the case was last reversed.

2. The facts of the case are pretty correctly stated as to the sale of the land by Davis to Roberts, and the sale by Roberts to Lovejoy—first, by a verbal contract, and afterwards the assignment of the bonds to Lovejoy, as the basis upon which to bring his action for the purchase money before the justice of the peace.

Plaintiffs, however, intimated that Roberts slept upon his rights, and "did not proceed promptly to assert his right to rescind, if any he had, and bring his original suit for the land, but pressed his suit for the money to judgment against him, and then suffered many years to elapse, and the land to increase in value," etc.

This assertion is not true in fact, and would perhaps mislead the court if their attention was not called to certain facts as they appear in the petition of plaintiffs, the answer of Davis, and the petition of intervention by Roberts. Davis sold the land to Roberts in March, 1849, before patent had been issued, and immediately thereafter went to California, where he remained until 1856, when he returned to Texas, and on the twenty-fourth of March, 1857, this suit was commenced, and on the seventeenth of April, of the same year (1857), Roberts filed his plea of intervention. And hence it most clearly appears that Roberts was about as vigilant in asserting his rights to the land as was the plaintiffs after Davis's return from California. It nowhere appears, by the record, that the land was occupied by any one, or that it was more valuable in 1856 than it was in 1849.

Roberts never affirmed the contract. All that he did was to transfer in writing the bond that had been, before that time, delivered to Lovejoy under the verbal contract; but Lovejoy did disaffirm it—first, by seeking to defeat the recovery of the purchase money by pleading the statute of frauds; and second, by resisting the payment of the purchase money after the bond for title had been regularly transferred to him.

There are other inconsistencies and errors in the plaintiffs' brief, which the court will readily discover on a comparison of the statements in the brief with the transcript.

3. For the defendants, I shall not review all the cases cited by plaintiffs, nor do I think it necessary to cite any authorities other than those cited in the briefs filed in this case on former trials in this court, and those referred to by plaintiffs in their brief in this case. The truth as to all of these cases is, that each one of them

stands or falls upon some peculiar facts involved in each case, and so it must be with this case. The cause now under consideration has been decided often enough to make a case by itself, *sui generis.* ' There is not one that has preceded it that will answer as a precedent, and for the good of those engaged in the controversy it is to be hoped that none may come after it; so that this case can be looked to for authority in all the points involved. The decision made by Judge Wheeler in this case ought to have settled it finally and forever; but, strange to say, on the second trial in the court below, the judge gave almost the identical charges that the judge who first tried it did, and refused the charges that had been asked for intervenor on both trials. Judge Wheelers's decision reversed the case on the facts. Judge Donley, pursuing the same line of reasoning, also reversed it the second time on the facts; and upon the third trial in the court below, the only charge given was that which was the natural sequence of the decisions that had been made by this court, which was, Did Lovejoy disaffirm the contract so as to work a forfeiture of his right to ask a deed for the land from Davis?

This was the only question, and hence the charges asked by the plaintiffs, and refused, of which they now complain, should now, as on former trials in this court, be wholly disregarded.

It is somewhat remarkable that, in a controversy between parties which has lasted for nearly a quarter of a century, in one shape or another, the witnesses by whom the facts in this case have, from time to time, been proven, should all of them still live, and all of them have testified in the former trials. And if we had either of the former statements of facts, it would be seen that there was no fact proven in this case that was

39—XXXV

not proven in both of the others, and by the same iden-
tical witnesses ; and, as already remarked, this case has
been twice decided on the facts against the plaintiffs ;
and it would seem to be a very useless consumption of
time to controvert the positions of plaintiffs in regard
to the rulings of the court, in refusing to give the in
structions asked by them, and refused.    Almost the
identical instructions now asked for had been given by
two district judges who had tried this case, and who
had also refused the charge that was given by the
judge who tried this case.    Neither of the Supreme
Courts that have adjudicated this cause have passed
upon the rulings of the district courts, either in refus-
ing the charges asked on those trials, or the errors
complained of by the defendants (then plaintiffs), on
appeals to this court.    They have, each of them, simply
decided that Lovejoy repudiated the contract he had
made with Roberts, and disaffirmed the contract in the
most pointed manner, and hence was not entitled to re-
cover.    This was the only question left to be decided
after the first reversal of this case, and no other ques-
tion was submitted by me in the charge asked on the
trial, and given by the judge.

WALKER, J.—The facts of this case, as we find them
correctly stated in the brief filed by appellant, are as
follows :    In 1849, William Davis made and delivered
to Edward Roberts a title bond for the land in contro-
versy, covenanting for a deed whenever a patent issued.
Shortly afterwards, Roberts sold the land by a verbal
contract to Lovejoy, and Lovejoy paid a part of the
purchase money.    Afterwards, Roberts sued Lovejoy
for the unpaid balance of the purchase money.

Lovejoy defended the action on the statute of frauds,
and set up fraud and misrepresentation in the sale.    At

the trial of the cause, which was on the seventh of April, 1850, Roberts tendered to Lovejoy a conveyance in writing of the land, which Lovejoy accepted, but insisted upon reconvention under the plea of fraud and misrepresentation. The issue was found in his favor.

Lovejoy afterwards sold the land to Watts. The patent having issued on the twenty-fourth of March, 1857, Lovejoy brought suit against Davis, to whom the patent had issued, for the use of Watts. On the seventeenth of April, 1857, Roberts intervened and claimed a recision of his contract with Lovejoy. Pending the suit, Watts sold to Tucker, and Roberts resold one-half of the land to the same party.

Without noticing the errors assigned, or the able argument of counsel, we think it clear, from the statement of the case and from the facts, that Roberts has never made out a case entitling him to a recision of the contract, and that he should have been held to be estopped by his deed to Lovejoy from all future claim to the land.

If Roberts did misrepresent the quantity, quality, or value of the land to Lovejoy, the latter may have been entitled in equity to a rebate of the price paid or agreed to be paid; and a court of equity could have decreed accordingly, without necessarily rescinding the contract.

This case has been twice before this court, but certainly never upon a fair statement of the facts and issues in law.

The principles of law heretofore announced by the court, abstractly considered, may be correct, and yet not be applicable to the case as it stands before us.

The judgment of the district court is reversed, and the cause remanded, to be proceeded in in accordance with this opinion.

WALKER, J.—We are again called on to review a former opinion.

The attorney for appellant, as the main ground relied on for a new hearing, insists that we have decided this case differently from the former decisions of the court.

We are certainly aware of this fact, and at the same time we do not differ from the former opinions in any matter of law whatever applicable to this case. But an important fact is brought before us, and urged for our consideration, which certainly could not have been considered by our predecessors.

But the best and the wisest have erred. There is no error in the law of the opinion of Chief Justice Wheeler; but there is an entire silence, as we propose to show by quoting herein his entire opinion, upon a most material fact, which, if he had considered it, would most assuredly have led his mind to a different conclusion.

We give the opinion, and most cordially endorse it in its application to any case to which it can properly apply:

"Nothing can be more clearly settled than that a court of equity will not decree the specific performance of a contract in favor of a party who refuses performance in the whole or in part. The plaintiff had refused to pay a portion of the purchase money. It makes no difference that his refusal was sanctioned by the judgment of the justice; it was none the less a disaffirmance of the contract on his part, and released the other party from his obligation to perform.

"A party who seeks the specific performance of a contract must have performed, or must show a readiness to perform, *the very contract in terms of which he seeks performance.* He cannot disaffirm it in part, and

at the same time hold the other party to the whole of his undertaking. The court will not aid him to have performance of the contract when he rejects any part of it. That would be to make for the parties a new contract, to which they had not given their assent.

"Courts of equity do not modify or change the contracts of parties to suit their own sense of what would be equitable and just in the premises, but leave them to make their own contracts.

"It may be that the defendant would never have entered into the contract which the plaintiff now seeks to enforce against him ; that is, a contract to convey his right to the land in question for a sum considerably less than that for which he stipulated as the consideration for the transfer. Whether he would or not the court cannot know, and cannot undertake to make for him a contract, which he has not made, without his consent. Courts never make contracts for parties ; they will only compel performance of the contract which the parties have actually made, and only in favor of the party who has performed, or is ready and willing to perform, his undertaking according to its terms, and who is without fault.

"To entitle the plaintiff to maintain his action, he must show himself entitled to a specific performance as against his immediate vendor. This he has failed to do ; and the judgment therefore cannot be maintained.

"As the plaintiff has failed to make out his case upon the merits, it is unnecessary to revise the rulings of the court upon incidental questions."

As the opinion of the court delivered by Judge Donley in this case (28 Texas, 641), is also invoked against us, and out of great respect to th' opinion, we also quote it entire. The opinion is as f .ows :—

"This cause was before this cour on appeal by

Edward Roberts, now deceased, and was reversed on the third day of January, 1861. (25 Texas, Sup., 437.) It was there held that a court of equity will not decree a specific performance of a contract in favor of a party who refuses performance of his agreement in whole or in part.

"From the evidence in this case, it appears that, more than seventeen years since, the plaintiff's intestate, Edward Roberts, assigned to the defendant in error a bond on William Davis, for the land in controversy, which bond stipulates that Davis should make title to the land as soon as a patent should be obtained from the government. It appears that there remained of the consideration agreed to be given for this land by appellee, on the first of January, 1850, the sum of $84.25; that the said Edward Roberts endeavored to collect the money of the appellee by suit before a justice of the peace; that the appellee made a successful defense to the suit, and the said Edward Roberts was adjudged to pay the costs incurred in the cause; that since then and since the institution of this suit, Edward Roberts, acting, as he might lawfully do, on the fact that, in effect, the appellee had repudiated the contract in 1850, by refusing the consideration agreed to be given for the land, sold the one-half of the land, and by that sale has incurred a liability on his warranty of title to the purchaser, that will require nearly double the amount that is adjudged to appellant to pay. It is not carrying into effect the agreement with justice to both parties, to adjudge to appellant the amount that was due more than sixteen years before.

"If the defendant in error must sustain an injury, it is properly chargeable to his own acts in refusing to abide by and perform his contract."

We have given our unqualified approbation to these

two opinions, to the full extent that any principle of law is therein enunciated. But there is a paragraph in the opinion of Chief Justice Wheeler which, if it stood alone, and was uninterpreted by the opinion of the same learned jurist in the case of Roeder v. Robson, 20 Texas, 765, we could not approve.

In that case the learned judge uses this language : " If the plaintiff chose to consider the contract rescinded by reason of default of the defendant in making prompt payment, he should not have brought suit on the note. That was to confirm the contract as being in full force, and to ask specific performance of it. * * * If the receipt of purchase money after default will waive the default, the bringing of a suit for it, which has the same effect as a bill in equity for specific performance of the contract, should have, it would seem, the same effect, unless the defendant should then resist its payment without any *good reason or equitable excuse.*"

But suppose there should be "good reason or equitable excuse ;" and suppose that good reason and that equitable excuse are set up in a court of justice, and sustained by the judgment of that court, we think this must have some effect and bearing upon the rights of parties ; and a court of equity, whilst it might enforce the contract in part, would modify it in accordance with the "good reason and equitable excuse."

This was doubtless what Chief Justice Wheeler meant in the case at bar ; but when he says "that the vendee must perform the contract as made," this language is too broad, and without the qualification given in Roeder v. Robson it would not meet the sanction of the courts, nor the approval of text writers. But we know what Chief Justice Wheeler meant, and therefore we mean no criticism. The doctrine of Roeder v. Robson,

and that which we mean to apply in this case, is broadly laid down by Chief Justice Hemphill, in Estes v. Browning, 11 Texas, 237. The Chief Justice says: "Where the vendee in an executory contract for the sale of lands fails to pay the purchase money according to the contract, and the vendor brings suit to recover the land, the vendee, if he can present any equitable considerations in excuse for his negligence, may offer to pay, and pray a conveyance."

Now, in the case at bar, when this question was tried in the justice's court, the judgment of the court was virtually that Lovejoy had paid Roberts all that he was entitled to receive, and that he was excused and exonerated from the payment of the $85.25 and interest, claimed in that suit by Roberts, by reason of the false and fraudulent representations of the latter, both as to the quality and quantity of the land sold.

Here, then, is the equitable excuse furnished by Lovejoy, found in the judgment of the justice, and never appealed from. Lovejoy was then excused by this judgment from any further payment to Roberts, and had a right to a decree for the land in consideration of what he had paid. Is this not a material fact? Should not this court have taken some notice of it on the former adjudications, and decided the law as applicable to it? Does it not bring the case entirely within the rule of Estes v. Browning and Roeder v. Robson? Roberts purchased the land from Davis, and took a bond for title, to be made whenever the patent issued; he sold the land to Lovejoy under a verbal contract, Lovejoy paying him more than half the purchase money, and agreeing to make a deferred payment of $85.25. Roberts sued Lovejoy for this deferred payment before a justice of the peace. Lovejoy set up the statute of frauds, and also plead, in excuse for the non-payment

of the money, the fraudulent representations of Roberts as to the quantity and quality of the land; and now, on page 39 of the record, we find this very important fact in the statement of facts, and we extract from the record, to-wit: "That the claim there sued for by said Roberts was for the balance of the purchase money due on the land; that the assignment on the bond was tendered at the trial to obviate the effect of the first plea of Lovejoy, and that said bond was delivered to said Lovejoy, at the trial before said justice, as *an absolute conveyance of the land*." Now, where is there any allusion in either of the opinions hereinbefore delivered to these important facts as being at all material to the decision of the case?

We have not said, nor do we now say, that these facts were not before the court in No. 1955, and there was little necessity for bringing again to our notice this record. Were these facts sufficiently material to merit the notice of the court? In our judgment, they are just so material as to govern the decision of the case. Roberts, no doubt under the advice of the same able counsel who have represented him, living and dead, for nearly a quarter of century, tendered to Lovejoy, "as an absolute conveyance of the land," as shown by the statement of facts, his bond from Davis for title; and Lovejoy, no doubt acting under the advice of equally able counsel, accepted the conveyance, thus affirming and executing the contract, or making a new one.

But the case was yet on trial, and was heard and tried upon Lovejoy's plea, setting up that Roberts had defrauded him in the sale of the land, and that he was entitled to a rebatement of the entire $85 sued for. And upon the trial, the justice found for Lovejoy, and from this judgment Roberts has never appealed. What, then, was the condition of the parties? Simply this, in

our judgment: Roberts conveyed all the interest he had in the land to Lovejoy, by the assignment of the title bond from Davis as an absolute conveyance to Lovejoy, and Lovejoy accepted the conveyance; and thus both parties affirmed and validated the contract, subject to the judgment of the court upon Lovejoy's equitable defense to the payment of the unpaid purchase money. At least, this was the effect, in law, of their acts. What right, then, has Roberts, or his heirs, to the land in controversy? He had no legal title, and he assigned all his equities to Lovejoy. None whatever, that we can see; nor has he any right to complain that he did not receive the full amount of the purchase money agreed on, if, by fraudulent representations touching the quantity and quality of the land, he had made a contract inequitable in itself.

As to the facts proven before the justice, we know nothing. The judgment may have been right or wrong; if wrong, he should appeal from it, and relieve himself from the charge of fraud. In the opinion of the court, delivered by Judge Donley, the fact is recognized that Lovejoy did make a successful defense to Roberts's action before the justice; and the learned judge says, "that since then, and since the institution of this suit, Roberts, acting as he might lawfully do on the fact that, in effect, Lovejoy had repudiated the contract by refusing the consideration agreed to be given for the land, had sold one-half of the land, and by that sale has incurred a liability on his warranty of title to the purchaser that will require nearly double the amount that is adjudged to appellant to pay. It is not carrying into effect the agreement, with justice to both parties, to adjudge to appellant the amount that was due more than sixteen years ago. If the defendant in error must sustain an injury, it is properly chargeable to

his own acts in refusing to abide by and perform his contract.''

Now, let us examine this reasoning for one moment, and see whether it has a proper application to this case. What acts of Lovejoy are to condemn him in a court of equity by this parity of reasoning? He paid more than one-half the purchase money, and when sued for the remainder he set up in a court of justice, as a defense to the demand, that he had been cheated and defrauded in the sale ; and the court sustained his plea, and the judgment of the court has never been appealed from, nor impeached, to this day. On the other hand, what right had Roberts to sell any portion of the land to Tucker? He never had the legal title ; and by an absolute assignment of his equities to Lovejoy, in open court, he left in himself no right or title whatever. And now, is his subsequent conveyance to Tucker by warrantee deed, when he had no title, and knew he had no title, an act in itself that is to raise an equity, or thus to be considered by a learned and able court; and because, forsooth, his liability to Tucker would be greater than the amount coming to him from Lovejoy, he must have the land back, in order to save him his liability to Tucker on the covenants of his deed? If this be law or equity, then A may sell his land to-day and deed it to B for $1000, to be paid at the expiration of six months ; but before the six months have transpired A discovers that C will give him $2000 for the land, whereupon, without any title whatever, he sells the land to C for the $2000, and warrants the title. The parties come into a court of equity and ask that these facts may be adjudicated. Will any court, having its eyes open, say that the contract between A and B must be set aside, for the reason that A has incurred to C a liability which the thousand dollars B

owes will not discharge? We, with all deference, de-
cline to adopt any such doctrine; nor do we believe,
as is contended in the able brief of appellant's counsel,
that our predecessors would have adopted it, if due
regard had been paid to all the facts in this case.

It is not necessary that we should dispute with those
learned men any proposition of law which could have
fairly grown out of this case.

For the reasons we have herein given, we affirm our
former opinion.

REVERSED AND REMANDED.