## W. W. YETTER ET AL. v. W. T. HUDSON ET AL.

### (Case No. 4528.)

1. DAMAGES.— A party contracted to deliver cattle at a price and time stipulated, and received $7,000 as an advance payment on the contract. To secure that $7,000 he executed his note, and deposited it in bank with collaterals to secure its repayment in case of default in delivery of the cattle. He at the same time executed and deposited in bank his negotiable note for $1,600, due and payable on the day of default, which by contract between the parties was agreed on as "stipulated damages" if default should be made in delivery of the cattle. Default was made in the delivery of the cattle, and in a suit to recover the advance of $7,000, and for damages, *held* —

    (1) The plaintiff was entitled to a judgment for the amounts specified in the two notes, with interest thereon from the day when default was made in delivery.

    (2) The sum of $1,600 was the amount of liquidated damages agreed on by the parties, and not a penalty.

2. FACT CASE.— See statement of case and opinion for a full statement of facts, under which an amount agreed on as damages was held to be fixed and stipulated damages, and not a penalty.

3. DAMAGES.— Whether a sum agreed to be paid as damages for the violation of an agreement shall be considered as liquidated damages, or only a penalty, must depend on the meaning and intent of the parties as gathered from a full view of the provisions of the contract, the terms used to express that intent, and the peculiar circumstances of the subject matter of agreement.

4. DAMAGES.— In all such cases the contract must govern; and whether it was folly or wisdom for the contracting parties thus to bind themselves is of no consequence, if the intention be clear.

APPEAL from Tarrant. Tried below before the Hon. A. J. Hood.

Suit filed May 6, 1881, in the district court of Tarrant county, by appellants, to recover from W. T. Hudson $14,200 damages, alleged to be due from Hudson to appellants, by reason of a breach of contract on the part of Hudson to deliver to appellants on the 1st day of May, 1881, sixteen hundred head of yearling steer cattle, at $6.50 per head.

The First National Bank of Fort Worth was also made a defendant, as a depositary of certain collaterals as securities, under allegations that the parties making the contract here sued on deposited the same with the president of said bank for the benefit of the party who should be entitled to have the same in case of breach of the contract. Prayer for judgment against defendant Hudson for damages as above stated, " and for the possession of said Scott notes and the enforcement of their lien thereon, and the amount of said notes when they can be collected be decreed to plaintiffs, and that plaintiffs have their execution against Hudson for all their dues; and that all their rights in the premises be enforced, and for general and special relief in law and in equity."

There was, February 27, 1882, a trial of the cause by a jury, which resulted in a verdict for appellants against appellee Hudson for $7,659.53, and for appellee, the First National Bank of Fort Worth, judgment upon the verdict against appellee Hudson for said sum of $7,659.53 and costs; that appellee, the First National Bank, go hence without day, and recover from appellants all costs in this behalf expended, etc. Appellants made a motion for a new trial, which was by the court overruled, to which ruling appellants excepted, and gave notice of appeal, assigned errors, and brought the cause up by appeal.

The appellants' counsel, in his brief, stated fully the case as made in the petition, as follows:

Appellants alleged in their petition that on the 23d of November, 1880, at the special instance and request of appellee Hudson, they purchased of him sixteen hundred head of yearling steer cattle, which Hudson was to deliver to them in Johnson county, Texas. That the contract for the purchase, sale and delivery of the cattle was in writing, a copy of which contract was made an exhibit and part of the petition; that by its terms appellants were to pay for the cattle $6.50 per head, and that appellants advanced and paid appellee Hudson $7,000 on the price of the cattle. That on November 23, 1880, appellee Hudson executed and delivered to appellants his obligation in writing for the $7,000, payable in cattle according to the contract; and in case the cattle were not delivered according to the contract, then this obligation became a promissory note, payable in money at the First National Bank in Fort Worth, in Tarrant county. This obligation was made an exhibit and part of the petition. Appellants further averred that they bound themselves by the contract to forfeit and pay Hudson $1,600 in case they failed to perform their part of the contract, and Hudson, on the 23d of November, 1880, executed and delivered to them his obligation in writing for $1,600 as a forfeit, which obligation was made an exhibit and part of the petition, and by its terms he (Hudson) was, in case of failure to comply with his contract, to pay the same at the First National Bank. That as security for the money advanced, and on his forfeitures, Hudson indorsed other notes of one Winfield Scott, ten in number, the principal thereof amounting to $9,447.92, which, with said contract and other instruments mentioned, were deposited with the bank, to be held for both parties, appellants and Hudson. Appellants alleged that they had faithfully complied with their contract; that Hudson faithfully promised them to deliver the cattle as contracted, and thereby induced them to make a large advancement

to him, as set forth in exhibit "B," to wit, $7,000, and that although the time had long passed when he was to deliver the cattle, and appellants had ever been, and were still ready and willing to receive them, and pay any balance that might be due, of which Hudson always had notice, yet he had not delivered the cattle or paid the sums of money mentioned in exhibits "A," "B" and "C," but had wholly failed to deliver the cattle or pay the money. That the obligation of $1,600 as a forfeiture was not accepted by appellants as a measure of the damages they might sustain by a breach of the contract on the part of Hudson, as would appear from exhibit "A." That $6.50 per head was a reasonable price for the cattle at the time of making the contract. At that date they could have been purchased at a much less price, and that said price was so fixed by said Hudson himself. That it was understood by the parties to the contract, and expressed in the contract, that by acceptance of the obligations, with the securities therefor, appellants in no wise waived or surrendered any rights against Hudson for any breach of contract that might occur, and appellants averred that they could not purchase such cattle "at this late day" in the season for a less sum that $10 per head. Wherefore they have been damaged in the sum of $5,600, which amount they would have realized as gains on their contract upon the full performance thereof by appellee Hudson, and for which sum, together with the $7,000 advanced on the contract, together with the $1,600 forfeit, with interest thereon, amounting in the aggregate to $14,200, besides interest, for which they sued. Appellants further alleged that the contract, with both obligations and the Winfield Scott notes and securities, were deposited with the First National Bank, and that said bank had the same in possession, and still had and refused to deliver the same to appellants. Wherefore the bank was made a party that it might be required to produce and deliver up said instruments, that appellants enforce their rights in reference thereto, and equity in the premises be done. Appellants prayed for citation for Hudson; for judgment against him for their debt, interest, damages and costs; for possession of the Scott notes; for the enforcement of their lien thereon; that the amount of same be allowed to them when the notes could be collected; for execution against Hudson for all their dues, and that all their rights in the premises be enforced, and for general and special relief in law and equity.

The contract for the sale of the cattle was marked exhibit "A," and made a part of the petition. By its terms, Hudson, for $6.50 per head, bargained and sold to appellants one thousand six hundred

yearling steer cattle to be of full age,— one year old each,— good average northern Texas cattle, and to be gathered and delivered to appellants at Hudson's ranche, on Mustang creek, in Johnson county, Texas, on the 1st day of May, 1881. For the performance of which, Hudson bound himself, and for security, and as an earnest therein and therefor, he made a deposit, afterwards set out in the contract, and appellants, in consideration of the full and complete performance of the contract and delivery of the cattle of the kind and quality mentioned, to be branded with their brand, agreed, first, to pay Hudson on delivery, May 1, 1881, at a place specified, $6.50 per head for each and every one of the one thousand six hundred head; and for the purpose of binding themselves thereto, appellants deposited the sum of money afterwards expressed as a forfeit in case appellants should fail from any cause to comply with the requirements of the contract.

Second. Appellants agreed to furnish Hudson their branding irons to be used by him in branding the cattle in their specified brand as gathered, and not to claim title to the cattle so branded until delivered to them as before stated, requiring appellee Hudson, however, not to use the said brand on any cattle except such as were to be delivered to appellants. The irons to be returned on delivery of the cattle.

Third. Appellants agreed to furnish and advance on the price of the cattle $7,000 to appellee Hudson, he giving them security therefor in negotiable notes of Winfield Scott in the sum of, at least, $9,000, well secured, the same to be held with the contract. The amount so advanced to be accounted for to appellants on payment of the cattle. And by accepting the securities and notes aforesaid, appellants in no wise waive or surrender any rights against said Hudson for any breach of contract that may occur.

Fourth. Appellee Hudson agreed to execute his promissory note for the $1,600, and secure same with the Winfield Scott notes to appellants, to be deposited with the contract, payable to appellants as a forfeit and liquidated damages in case of failure or refusal to comply with the terms of the contract; and in case of his failure to so fulfill his part of the contract, then said note for $1,600 shall become absolute and payable at once. And appellants agreed to and promised to forfeit to appellee Hudson the sum of $1,600, out of the $7,000 advanced, in case of their forfeiture or refusal to comply with their contract.

Fifth. Neither party to the contract should be allowed to withdraw his deposit, or in any wise alter, change or incumber the same until after the fulfillment of the contract, and upon completion of

the contract appellants should reindorse the Scott notes and securities, and allow the same to be withdrawn, and appellants shall then be at liberty to withdraw their said sum of $1,600.

Sixth. The contract with the said deposits shall be deposited at the First National Bank in Fort Worth, Tarrant county, and be subject to inspection of any of the parties, and held by the bank for both parties, and until the completion of said contract is declared to the bank by both parties, dated November 23, 1880, and signed by both parties. An obligation executed by appellee Hudson, dated November 23, 1880, in which, on May 1, 1881, in consideration of the advancement as per contract that day made, between himself and appellants, he promised to pay appellants $7,000 in good average, healthy yearling steer cattle of full age, one year old each, to be delivered by him to appellants at Hudson's ranche, on Mustang creek, in Johnson county, Texas, on the date aforesaid; and in case he should fail, from any cause, to deliver the cattle as above, and in full comply with the contract this day entered into, then this note shall be payable on the date aforesaid at the First National Bank of Fort Worth, Tarrant county, Texas. And I hereby waive any demand and notice of protest. This note is secured, further, by other notes and mortgages by me deposited as collateral security. And it is further understood the collateral security does not waive my liability herein in case of breach of contract.

This obligation was signed by appellee Hudson, marked exhibit "B," and made part of the petition. The note given by appellee Hudson to appellants for $1,600, in consideration of the advancement, dated November 23, 1880, and deposited as a forfeit upon failure to comply with the contract, and in that event to become liquidated damages, and payable, was by copy marked exhibit "C," and made part of the petition.

Appellee Hudson demurred generally to the petition, and specially to so much of it as claimed special damages over and above the amount of $1,600, on account of the breach of contract therein set forth, for that by the face of said contract as set forth therein, the plaintiffs' said damages are limited to the recovery of said $1,600.

In addition to the demurrer he filed a general denial, and pleaded specially that the contract was, on the —— day of December, 1880, and before the filing of petition, by consent abrogated and annulled, and plaintiffs acknowledge full satisfaction for same.

The general demurrer and special exception of appellee Hudson to the petition was overruled, to which appellee excepted.

The contract as alleged was proved.

The breach of the contract by appellee by failure to deliver the cattle was proved.

On the trial, while on the stand as a witness, J. H. Allen, after having testified that appellee Hudson had failed and refused to deliver the cattle according to his contract, and appellants' counsel had proved by the witness that he knew the market value of such cattle as mentioned in the contract on May 1, 1881, at Hudson's ranche, in Johnson county, was asked to state the market value of such cattle as were mentioned in the contract at the place and time they were to have been delivered to the appellants. Appellee's counsel objected to the witness answering, for that the question was irrelevant, in this, that appellants had nowhere alleged in their petition that they had in any way sustained special damage by reason of the enhanced value of the cattle at the time of the alleged breach, and that to allow him to go into that question would be a surprise, and work injustice to appellee (defendant). Appellants' (plaintiffs') counsel insisted that he had a right, under his pleadings, to prove the market value of the cattle, and that this witness would testify that they were worth $10. The court sustained the objection and excluded the evidence, to which ruling appellants excepted. Appellants then put W. W. Yetter, J. D. Reed, Burk Burnett, John A. Knight and John Flint on the stand, all of whom were large cattle owners and traders, and offered to prove by them the same facts, to wit: that such cattle as mentioned in the contract were worth $10 per head at the time and place of delivery; to all of which Hudson's counsel objected, and the objection being sustained by the court and their evidence excluded, appellants excepted to the ruling and filed their bill of exceptions.

The charge of the court, amongst other things, instructed the jury as follows:

"That under the allegations set forth and contained in the written pleadings of the plaintiffs and defendants, and under the evidence adduced on the trials, it will be your duty to weigh and consider the testimony with reference to a delivery by defendant Hudson of the said cattle to said plaintiffs, and if you conclude and find from the testimony that defendant Hudson failed to deliver said cattle to the plaintiffs on or by said 1st day of May, 1881, then it will be your duty to find and return a verdict for the said plaintiffs for the said sum of $7,000 damages, together with interest on said sum at the rate of eight per centum per annum from said 23d day of November, 1880, until this date. The law is, that under the pleadings of the plaintiffs in this case, as set forth in their petition,

they cannot in this suit recover from the defendant Hudson a greater sum of money than said $7,000 and interest thereon, as above indicated."

Appellants asked the court to charge the jury as follows, to wit:

Second. "You will say by your verdict, gentlemen, whether or not defendant Hudson executed his said obligation, in the sum of $1,600, as alleged in plaintiffs' petition. And you will also determine whether or not the defendant Hudson complied with his said contract."

Third. "If you find that defendant Hudson did fail to comply with his contract, as alleged in plaintiffs' petition, then you will find for plaintiffs in the additional sum of $1,600, together with eight per cent. per annum from the date of the forfeiture, or on which the cattle were to have been delivered, and this, with the $7,000 and interest thereon, as before stated, will be your verdict for the plaintiffs."

*James H. Burts*, for appellants.

*J. C. Scott* and *Templeton & Carter*, also for appellants.

*Ball & McCart*, for appellee.

WALKER, P. J. COM. APP.— The legal effect of the exclusion of the testimony which the plaintiffs offered, and of the refusal to give the instructions numbered two and three, asked by the plaintiffs, was for the court to deny to them, under the pleadings and evidence, the right to recover any damages for the breach of the contract sued on, other than the money paid out, with legal interest upon the amount ($7,000) which the plaintiffs had advanced to the defendant at the time of entering into the contract.

The measure of damages for a breach of the contract by the defendant was established by the express stipulation and terms of the contract itself; the contract, evidenced by three several instruments of writing, being set forth in the petition as exhibits, it appeared therefrom, as a matter of law, that the parties themselves had fixed the sum of $1,600 as the compensation for the failure or refusal of the defendant to deliver the cattle embraced by the contract.

The plaintiffs in their petition undertake to contradict the effect and terms of these instruments of writing on which they bring their suit, by alleging that the obligation of $1,600 as a forfeiture was not accepted by them as a measure of the damages they might sustain by a breach of the contract on the part of Hudson, and claim,

therefore, that they are not limited in their damages to the recovery of that sum as liquidated damages, but that they are entitled to that sum as so much specific and agreed on damages, and also to $5,600 as the difference to which they are entitled on account of the advance in value of such cattle at the date when they ought to have been delivered, making, together with the $7,000 advanced, the total of $14,200. They allege neither fraud nor mistake in the written contract, and they cannot impugn in this manner the solemn contract which they themselves set forth as containing all that was agreed to in its formation; the contract, as the same is written, speaks for itself; and the instruments of writing which evidence it declare what were the terms upon which it was made and delivered. It is not pretended that any other written instruments than these were made between these parties, whereby the contract is to be varied or explained, and most certainly parol evidence will not be permitted to vary or alter its terms. The true construction of the instruments set forth as forming the contract is that the collaterals or notes deposited, together with these instruments sued on, in the bank, were intended to secure whatever liability was stipulated to be met by the defendant under his agreements and undertakings, including therein the obligation to pay $1,600 as a forfeit or stipulated damages; and that the latter instrument was not referred to nor its effect and operation meant to be qualified, by the use of the expressions contained in exhibit " A," to the effect that by the acceptance of the obligations with the securities therefor, the plaintiffs " in no wise waived or surrendered any rights " against the defendant Hudson " for any breach of contract that might occur." The clause referred to is contained in the third paragraph of the contract, and in terms refers to those securities and notes which in the preceding portion of the instrument had been described, viz., the defendant's note for the cattle, or, in default of their delivery, the payment of $7,000, and the securities, viz., the Winfield Scott notes.

Evidently the clause in question contemplated in its scope the exclusion of doubt, if possible, as to the construction to be given to taking the note and securities, so far as it might suggest the idea that the security for the mere repayment, if necessary, of the $7,000 should or might operate to prejudice the plaintiffs' right to recover damages as well as the $7,000 for the breach of the contract. Such was the province, we think, of the provision referred to, and which the plaintiffs attempt to extend so far as to enable them to annul the provision agreed to for a stipulated amount as damages, and to claim, if possible, the advantages of both the one and the other.

The succeeding paragraph of the contract then proceeds to provide as to what shall be the forfeit or measure of damages; stipulating, as before stated, for $1,600 as liquidated damages, to which more positive and definite effect still is given by a separate instrument, which, in terms the most explicit and pertinent practicable, makes the obligation to pay $1,600 as liquidated damages not only absolute, but in terms confers upon the instrument the characteristics of a negotiable instrument, by providing that it shall be, in case of his (defendant's) failure, his negotiable promissory note for $1,600, to become absolute and payable at once.

Whilst the plaintiffs' petition disclaimed the true construction of the contract, and asserted pretensions for a measure of damages which a proper interpretation of the contract clearly denied to them, yet they did not relinquish their claim for damages under the defendant's obligation to pay $1,600; they simply urged that they did not accept the same as an obligation which limited them to that amount, if, in fact, their damages from a breach of contract could be established at a greater amount; and, indeed, they distinctly claimed judgment for said specified amount as a portion of the damages alleged to be due them. It being a question of law, therefore, under the allegations of the petition, as to what damages they were entitled to recover, the defendant's demurrer, which specially excepted to such part of the petition as claimed special damages over and above the amount of $1,600, ought to have been sustained; and because it appeared from the record alike that the plaintiffs were entitled to recover said sum as stipulated damages in case the defendant failed to comply with his contract, the court ought to have given the defendant's instructions which were refused, numbered one and two.

The charge of the court erroneously confined the plaintiffs' right of recovery to $7,000, and eight per cent. interest thereon from the date of the contract. The measure of compensation has been agreed upon by the parties, and the plaintiffs are entitled to no more, and can be restricted to no less, than $7,000 and $1,600, with legal interest on the sum of those two amounts from the 1st day of May, 1881. The parties had the right, if they chose to do so, by mutual agreement, to settle the amount of damages, uncertain in their nature, at any sum on which they might agree. In attempting to make provisions of this nature, it often happens that the law will construe as a penalty an agreement which in its terms stipulates for liquidated damages, but whether the sum stipulated to be paid on breach of an agreement is to be taken as liquidated damages, or as

a penalty, will depend upon the intention of the parties, to be ascertained by a just interpretation of the contract. Moore *v.* Anderson, 30 Tex., 230. And see Durst *v.* Swift, 11 Tex., 281–2, where the rules respecting stipulations for penalties and liquidated damages are discussed.

It is laid down in 2 Wait's Act. and Def., 436, "that whether a sum agreed to be paid as damages for the violation of an agreement shall be considered as liquidated damages, or only a penalty, is held to depend upon the meaning and intent of the parties as gathered from a full view of the provisions of the contract, the terms used to express such intent, and the peculiar circumstances of the subject matter of agreement." Dakin *v.* Williams, 17 Wend., 447; S. C., affirmed, 22 id., 201; Shule *v.* Hamilton, 3 Daly (N. Y.), 462; Perkins *v.* Lyman, 11 Mass., 76; Streeper *v.* Williams, 48 Pa. St., 450; Chase *v.* Allen, 13 Gray, 42. "The contract in such cases, as in every other, is to govern, and the true inquiry is, what was the undertaking. Whether it was folly or wisdom for the contracting parties thus to bind themselves is of no consequence, if the intention is clear." 2 Wait's Act. and Def., 436, citing 19 Barb., 106; 97 Mass., 445; 16 N. Y. (2 Smith), 469. "But the mere use of the term 'penalty,' or the term 'liquidated damages,' does not determine this intention, if, on the whole, the instrument discloses a different intent." Id., p. 436, citing 12 Moore's P. C., 199; 11 N. H., 234; 6 B. & C., 216, 224; 10 Mich., 188.

In this case the defendant, by the terms of the contract, not only provided in terms that he would pay $1,600 as "stipulated damages," but he made the same due and payable on the day of the default on his part at the bank, and secured its payment with the same collaterals which were deposited there to secure the repayment of the $7,000 which he had received from the plaintiffs. In fact, the defendant, in effect, executed two instruments of writing which were to be paid on his default, at the bank, for the sum, in the aggregate, of $8,600, both of which he designated as his notes, and characterized them as negotiable, and they covered, in a form the most definite and absolute, his valid promise to pay said sum as the damages which he recognized as due from himself to the plaintiffs in case of his failure to comply with his contract. No room, in a contract like this, is left for construction as to what was the intention of the parties in regard to the question of liquidated damages.

Further consideration need not be given to the errors assigned; on another trial the plaintiffs will be able to so frame their pleadings and proof as to obtain such judgment and decree as they may

be entitled to, in respect both to the amount of damages and the appropriate relief as to the enforcement of whatever lien they have on the securities alleged to have been deposited with the bank. The prayer of the petition for relief in respect to the enforcement of the lien upon the notes of Scott was indefinite and general; and the evidence showed no fact in regard to the securities further than that they were deposited at the time of making the contract with the bank along with the contract papers, all of which were to be held by the president of the bank for the parties.

It would seem, from the facts of the case, that if the plaintiffs had alleged and proved a demand for and refusal by the bank to deliver the collateral notes deposited, together with the deed of trust securing them, a basis would have been laid for relief; but it is not apparent, under the pleadings and proof, that the plaintiffs can complain that the court made no decree in respect to the said notes.

We conclude that there was error, and the judgment ought to be reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered December 21, 1882.]