Santa Fe Street Railway Company et al. v. Samuel Schutz.

Decided October 26, 1904.

**1.—Breach of Contract—Liquidated Damages—Penalty.**

Where a contract provides for the payment of a certain sum as liquidated damages in the event of the nonperformance of a specific act which may produce damages of an uncertain character, and no language is used indicating that such damages shall be considered only as a penalty, and if the sum named bears such proportion to the actual damages that it may reasonably be presumed to have been arrived at by a fair estimation of the parties, such sum is liquidated damages. .

**2.—Same.**

In consideration of a sum paid by an individual to a street railway company as an inducement to build their line in front of his property and operate it for twenty-five years, half the lifetime of the lease granted the company, it was agreed in a contract that in case operation throughout the entire line or any part should be suspended within that time the company would be liable for the amount donated to secure the line. Held, that such sum named was intended by the parties as liquidated damages and not as a penalty.

**3.—Contract—Construction.**

Such contract held to contemplate twenty-five years' continuous operation from the date of its execution.

**4.—Charge—Attorney Fees—Harmless Error.**

Where a contract provided for such reasonable attorney fees as the court may allow in case of suit on the contract, but no evidence was introduced as to what was a reasonable amount, it being agreed, however, by the parties on the trial that a certain amount would be reasonable, a charge requiring the jury to allow 10 percent attorney fees, though erroneous, was harmless where the amount awarded was the sum agreed on by the parties.

Appeal from District Court of El Paso. Tried below before Hon. J. M. Goggin.

*Millard Patterson & J. A. Buckler* and *Clark, Hawkins & Franklin,* for appellants.—As the plaintiff's petition alleges and the evidence shows that the street railroad company mentioned in the contract of July 30, 1889, was kept, maintained and operated up to about January 1, 1902 (about fourteen years), and there was no allegation in plaintiff's petition that he sustained any actual damage by its discontinuance, and there was no evidence that he was damaged in any amount whatever, the court should have construed the provision respecting the payment of the $3,481.07 as a penalty and not as a debt or forfeiture, and should not have instructed a verdict against the Santa Fe Railway Company for the $3,481.07.

Even if the parties intended by the contract to stipulate that the $3,481.07 should be paid for a breach of the contract, as the evidence shows that the Santa Fe Street Railway Company performed the contract for fourteen years (more than half of the period mentioned in the contract), and the plaintiff got the benefit of such part performance during all of said time, he was not entitled to recover the whole of the $3,481.07, but should have been limited at least in his recovery to the unexpired portion of the twenty-five years and a proportionate part of said amount. Gilliland v. Rollin, 59 N. W. Rep., 893; Brennan v. Clark, 46 N. W. Rep., 472; McChesney v. Hyde Park, 37 N. E. Rep., 858; 1 Pom. Eq. Jur., sec. 444; Grant v. Platt, 65 N. Y. S., 486; People v. Railway Co., 76 Cal., 29, 18 Pac. Rep., 90; Wybaux v. Live Stock Co., 22 Pac. Rep., 492; Davis v. Freeman, 10 Mich., 189, 19 Cent. Law Jour., 282; Lyman v. Babcock, 40 Wis., 503; Schugt v. Taylor, 46 Mass., 61; Berry v. Wisdom, 3 O. St., 241; Fetter on Equity, 109; Taylor v. Sandiford, 7 Wheat., 15; Clark on Contracts, 598-603; 1 Addison on Contracts, 749; Farrar v. Beeman, 63 Texas, 175.

*Beall & Kemp,* for appellee.—The amount specified in the contract sued on and recovered by the plaintiff is not a penalty, but a simple money demand which the plaintiff was entitled to recover on breach of the contract by the Santa Fe Railway Company. The fundamental principle which guides us in determining whether the amount stated in a contract is liquidated damages or a penalty, is the intention of the parties. Eakin v. Scott, 70 Texas, 445; Yetter v. Hudson, 55 Texas, 604; Durst v. Swift, 11 Texas, 281; Moore v. Anderson, 30 Texas, 230; Perkins v. Lyman, 11 Mass., 76; Collier v. Betterton, 87 Texas, 442; Copeland v. Holloman, 51 S. W. Rep., 257.

NEILL, ASSOCIATE JUSTICE.—This suit was brought by the appellee, Samuel Schutz, against the Santa Fe Street Railway Company, the Santa Fe Realty Company, and Z. T. White, upon the contract set out in our conclusions of fact, to recover the sum of $3,481.07, besides interest and attorney's fees, from the Santa Fe Street Railway Company as liquidated damages for the breach of said contract, and to foreclose, as against all the parties, a lien on certain property described in plaintiff's petition, given by the contract to secure plaintiff in the payment of the money sued for. The plaintiff also in the suit sought to recover damages against the Santa Fe Street Railway Company for an alleged conversion of one share of its stock to which plaintiff claimed to be entitled. By an order of the court, the El Paso Electric Railway Company was also made a party defendant to the suit.

The Santa Fe Street Railway Company filed its first amended original answer July 7, 1903, consisting of (1) of a general denial, and set up (2) by a special answer that it was incorporated in December, 1887, and established a mule or horse street car line along San Francisco Street, from its intersection with El Paso Street, and down Santa Fe Street to the river. That when it entered into the contract on July 30, 1889, with Samuel Schutz, its said street car line was already in operation, that the same was then a mule or horse car line, and both parties well understood that the same was to be operated as such in conjunction with a certain street car line on the Mexican side of the Rio Grande, in the city of Juarez, Mexico. That said street car line in Juarez, Mexico, extended for a distance of about three-fourths of a mile in said city, and was also a mule or horse car line. That it was well understood that said two street car lines were dependent on each other, and that one was practically useless without the other. That said street car line in Juarez belonged to a company organized in the Republic of Mexico, and that about the 1st day of January, 1902, the said Mexican company converted its horse car line in Juarez into an electric street car line, rendering the whole of the line belonging to the Santa Fe Street Railway Company in El Paso, Texas, practically useless as a mule or horse street car line. That this defendant had not broken the contract mentioned in the plaintiff's petition, but that it had been broken, if at all, by the electric railway company, but it denies that said contract has been broken in any way. That there has never been at any time even a partial or temporary discontinuance of the street car line on the south end of Santa Fe Street from the center of the bridge over

the river, up to Seventh Street. That if there has been any discontinuance. of the operation of the street car line upon any part of the route mentioned in said contract, the same was temporary and has resulted in no damage whatever to the plaintiff. That said El Paso Electric Railway Company has in contemplation and intends to build during the current year an electric street car line in front of plaintiff's property on San Francisco Street to the Union depot in said city. That instead of being damaged the plaintiff has been benefited by the discontinuance of the operation of the mule or horse car line in front of his property, and the conversion of the latter into an electric street car line, which is being operated through various streets within one block of the plaintiff's property. And that said electric street car system instead of being confined to the line mentioned in the plaintiff's contract, extends over the whole of the city of El Paso and by a circuit through the city of Juarez, Mexico, and that by a change made the plaintiff's property instead of being damaged has been greatly enhanced in value. That through the operation of the mule or horse street car line mentioned, from the time the same was established in 1887, up to January 1, 1902, the plaintiff's property was enhanced in value more than $3,500, and received all the benefit it could ever have received. That since the establishment of the said electric street car line in Juarez, Mexico, said street car line has been extended across the river into the city of El Paso and operated so as to include a large portion of El Paso, Texas, and that the operation of a mule or horse car line on the route mentioned in said contract, would have been useless and would have been a source of annoyance and a nuisance to the plaintiff, as well as to other people."

The El Paso Electric Railway Company filed substantially the same answer, and the Santa Fe Realty Company and Z. T. White, after entering their appearance, filed general denial.

The plaintiff interposed a general exception to the special answers of the Santa Fe Street Railway Company and the El Paso Electric Railway Company, which was sustained by the court.

The case was then tried before a jury, whom the court in part instructed as follows:

"Under the undisputed evidence in this case and the law applicable thereto, the plaintiff, Samuel Schutz, is entitled to recover of and from the defendant, Santa Fe Street Railway Company, the amount of his debt, interest and attorney's fees, and you are therefore instructed to return a verdict for the plaintiff for said $3,481.07, together with interest thereon at the rate of 6 percent per annum, from the 1st day of January, 1902, the date of the removal of said street railway from Santa Fe Street, as alleged, up to this date, and you will further find for the plaintiff against said Santa Fe Street Railway Company in a sum equal to 10 percent on said $3,481.07, with said interest added thereto, that is, 10 percent on both said principal and interest as attorney fees; and you will state in your verdict that you so find against the defendant, Santa Fe Street Railway Company; and you are further instructed to find in favor of Samuel Schutz, plaintiff, for a foreclosure of his said

lien against all of the defendants; that is, against the Santa Fe Street Railway Company, the Santa Fe Realty Company, the El Paso Electric Railway Company, and Z. T. White, upon the following described property: The rights, privileges, franchises and right of way described in plaintiff's petition, and the north nine feet of lot No. 4, and all of lots Nos. 5 to 9, inclusive, and the south one foot in lot No. 10, in block 62, situate in the city of El Paso, El Paso County, Texas, as appears on the map of Campbell's addition to the said city, as described in the petition." And then submitted in an applicable charge the issue raised by the pleadings as to the conversion of the share of stock.

A verdict was returned for plaintiff in accordance with the peremptory instruction of the court, and against him on the issue of the conversion of the stock. From the judgment entered in accordance with this verdict, the Santa Fe Street Railway Company, the El Paso Electric Railway Company and Z. T. White, have appealed.

. The facts are undisputed. They are as follows: In the years 1887, 1888 and 1889, the plaintiff was and still is the owner of certain real estate located in block No. 17 and block No. 27, Anson Mills' map of El Paso, Texas, which property fronts on the north line of San Francisco Street. In the year 1887 an enterprise was set on foot to establish, maintain and operate a street railway in the city of El Paso, upon a line extending from the point of intersection of El Paso and San Francisco streets westerly along the center of San Francisco Street, in front of a portion of plaintiff's property, to the point of intersection of San Francisco and Santa Fe streets, and thence southerly along the center of Santa Fe Street to the Rio Grande. The enterprise resulted in the incorporation of the defendant, Santa Fe Street Railway Company, on or about the 29th of December, 1887, its duration being named in its charter for a period of fifty years from the date last mentioned. In January, 1888, the city council of the city of El Paso, by an ordinance duly passed, granted the Santa Fe Street Railway Company the right, privilege and franchise to construct, maintain and operate a street railway route along the route above mentioned. And in the month of February, 1889, the council of said city, by ordinance duly passed, granted said street railway company the right, privilege and franchise to construct, maintain and operate a street railway along said route, said rights, privileges and franchises to continue, under the provision of the ordinance, for twenty-five years from the date of the same. The last mentioned ordinance is dated February 1, 1889. On July 3, 1888, said city council granted said street railway company the right to run freight cars of certain dimensions by mule or horse power from the store of Samuel Schutz, on San Francisco Street, over its right of way theretofore granted.

On the 30th day of July, 1889, the following agreement in writing was made and entered into by and between Samuel Schutz and the Santa Fe Street Railway Company, it being duly executed on behalf of said street railway company, to wit:

"El Paso, Texas, July 30, 1889.—This writing, by and between the Santa Fe Street Railway Company, party of the first part, a body cor-

porate under the laws of Texas, domiciled at El Paso, Texas, and now owning and operating a line of street railway beginning at the head of El Paso Street, in front of the building used by the Grand Central Hotel, thence southerly on said street to San Francisco Street, and along the center of said last named street to Santa Fe Street, thence southerly with center of Santa Fe Street to the center of the Rio Grande River, and Samuel Schutz, party of the second part, resident of said city of El Paso, witnesseth:

"That, whereas, said Samuel Schutz, party of the second part, for the purpose of enhancing the value of his real estate owned by him along and near the line of said railway, paid out and expended the sum of $1,481.87 for and on account of said railway enterprise, and, moved by the same inducement, promises, on certain conditions, to pay to said corporation the further sum of $2,000; and as some controversies exist between the parties about the conditions upon which the said sum of $2,000 was to be paid, it is now finally settled by the parties on the basis stated herein, and said Samuel Schutz, contemporaneously with the execution of this writing and in consideration of the execution of the same by party of the first part, waives all objections to payment of said last named sum, and now pays the same, the receipt of which is fully acknowledged. And in consideration of the premises and of said payment, the party of the first part, for itself, its assigns and successors, covenants and agrees to and with Samuel Schutz, his heirs, assigns, executors and administrators, that during one-half of the period named in the charter the street railway aforesaid shall be kept, maintained and operated in good faith throughout the entire line aforesaid, and not abandoned or removed, or any part thereof.

"Should, from any casualty, it become necessary temporarily to cease running the cars during the time reasonably necessary to repair any damage so caused, such cessation shall not be deemed a violation of the covenants and agreements above set forth.

"And, in addition to the foregoing covenants and agreements, the faithful performance of which constitutes a material part of the consideration for the payment of the said $2,000, the party of the first part, for itself, its assigns and successors, agrees that, in the event of the failure to so keep, maintain or operate as aforesaid from any cause, the sum aforesaid, to wit, $3,481.07, with lawful interest from the failure aforesaid, shall be paid to said Samuel Schutz, and in order to further secure the payment thereof, the party of the first part, for itself, its assigns and successors, gives and grants to said Samuel Schutz, his heirs, assigns, executors and administrators, a lien upon all the property, real and personal, or mixed, owned by it, together with its franchise, rights and privileges of every sort, including its right of way; and if it should appear that there is no law permitting a mortgage or lien of the franchise, this shall not vitiate any other provision herein. And in the event of a breach of the covenants and agreements by the party of the first part, or its assigns, successors or privies, said Samuel Schutz, his heirs, executors, administrators and assigns, may, in addition to any other remedies by him or them, sue to foreclose the aforesaid lien for the amount last aforesaid, interest and costs, and such reasonable at-

torney's fees as the court may allow. All of which items are declared to be liens upon property and property rights aforesaid.

"To prevent any misapprehension, it is understood that the covenants and agreements, each and all of them, embrace the assigns, successors and privies of party of the first part, as well as said party, however the same may be expressed.

"The party of the first part causes this instrument to be executed by the president, Z. T. White, and attested by the Secretary, Al Larmour.

"Witness our hands at El Paso, Texas, this 30th day of July, A. D. 1889.

"Z. T. White, President."

This instrument was duly acknowledged on the day of its execution, and was, on the 31st day of July, 1889, filed for record in the office of the county clerk of El Paso County, and was recorded therein in "Book 33, p. 274."

In the years 1887 and 1888, and up to July 30, 1889, said street railway company and the parties who started said enterprise had built and constructed a street railway along the route heretofore mentioned, and were owning and operating said line of railway, beginning at the head of El Paso Street, at its intersection with San Francisco Street, and running along San Francisco Street in a westerly direction to the center of Santa Fe Street, and down Santa Fe Street to the Rio Grande. As is recited in said agreement of July 30, 1889, Samuel Schutz, for the purpose of enhancing the value of his property on the line of said railway, paid and expended the sum of $1,481.07 on account of said street railway enterprise, and at the time said agreement was entered into he paid the said street railway company the $2,000 mentioned therein.

On the 1st day of January, 1902, the street railway track mentioned in the written agreement of July 30, 1889, which ran along San Francisco Street in front of Samuel Schutz's property, was taken up, and no part of said street railway line, between the intersection of the north end of El Paso Street and San Francisco Street, or along Santa Fe Street as far south as Seventh Street, has been operated since the 1st day of January, 1902, and no part of same has been operated as a mule or horse car line since that date. When the track of the street railway in front of Schutz's property was taken up, H. T. Edgar was present and directed the work of taking up the track.

When the contract of July 30, 1889, was executed, the only real estate owned by the Santa Fe Street Railway Company in the city of El Paso, Texas, was the north nine feet of lot No. 4, all of lots Nos. 5 and 9, and the south one foot of lot 10, block 62, Campbell's map. Besides this, it owned its right of way along San Francisco and Santa Fe streets to the river. On the 21st day of June, 1901, the Santa Fe Street Railway Company conveyed and sold to the Santa Fe Realty Company certain parcels of real estate situated in the city of El Paso, Texas, in which parcels were included the real estate above described, upon which the lien was adjudged and foreclosed in this suit. In the fall of 1901 all the capital stock of the Santa Fe Street Railway Company was sold by J. J. Gordon to H. T. Edgar, the present manager of

the El Paso Electric Railway Company. At the time of this sale Gordon deposited with the First National Bank of the city of El Paso, Texas, money, in the judgment of both parties sufficient to protect Edgar, as the purchaser of said stock, against the claim of Samuel Schutz, Gordon agreeing to hold H. T. Edgar, as the owner and holder of the stock, harmless as against any claim Schutz might assert against the property of the Santa Fe Street Railway Company under said agreement of July 30, 1889. However, it was directly understood between J. J. Gordon and H. T. Edgar that Gordon, as holder of said stock, did not recognize the justice or legality of any claim that Schutz might assert under said agreement. It was admitted upon the trial by the parties to this suit that $391.61 would be reasonable attorney's fees to be allowed plaintiff for the prosecution of the suit in case he should be entitled to recover. From the intersection of Seventh and Santa Fe streets to and across the Rio Grande the El Paso Electric Railway Company has been and still is operating an electric line of railway on Santa Fe Street, though on no other part of it. The plaintiff has never been repaid any of the money mentioned in the contract of July 30, 1889, as having been advanced by him, and which the instrument provides would be returned to him in case of a breach of said contract.

*Conclusions of Law.*—The assignments of error are directed against the action of the court in peremptorily instructing the jury to return a verdict against appellants, and in sustaining plaintiff's exceptions to the parts of the answers of the Santa Fe Street Railway Company and the El Paso Electric Railway Company, in which matters were specially plead in avoidance of plaintiff's action. There are other assignments of error, but as the questions raised by them are comprehended by the ones mentioned, and their determination will dispose of the others, we deem it unnecessary to state them.

The contentions of appellants are: (1) That as the Santa Fe Street Railway Company was maintained and operated from the date of the contract sued on up to the 1st of January, 1902, there being no allegations in plaintiff's petition nor evidence that he sustained any actual damages, the court should have construed the provision in the agreement of July 30, 1889, as a penalty and not as a debt or forfeiture. Or, in other words, that as the contract shows upon its face only $2,000 was paid the company on the faith of its promise to maintain and operate its railway in front of plaintiff's property, and as his petition and the undisputed evidence shows that it was maintained and operated for about fourteen years, the provision in respect to the $3,481.07 should have been construed as a penalty. (2) That if the stipulation in the contract for the payment of $3,481.07 to Samuel Schutz should be regarded as an obligation to be discharged by the operation of the street railway in front of his property for twenty-five years, the operation of the railway for fourteen years was a discharge pro tanto of such obligation, and plaintiff, if he could recover at all, could only recover a proportionate part of the sum for the unexpired part of the twenty-five years. (3) That the provision in the contract of July 30, 1889, in regard to keeping, maintaining and operating the entire line, should, in connection with

the stipulation for the payment of the $3,481.07, be construed as a covenant running with the property of the Santa Fe Street Railway Company and binding only upon the party that might be guilty of a breach of the same; and as there is no evidence that the covenant was broken by the company, it was error to give the peremptory instruction. (4) That as the contract provides the street railway company, or its successors, shall operate the road one-half the period of its charter, which was fifty years, and the time would not expire until 1937, thirty-three years hence, plaintiff's action was prematurely brought, for the street railway company, or its successors, were only obliged under the contract, if at all, to operate the street railroad twenty-five of the fifty years.

Though those contentions are made by many propositions asserted under the assignments in appellants' brief, it is believed they embrace every position insisted upon for a reversal of the judgment.

It will be seen from the contract of July 30, 1889, copied in our conclusions of fact, that it is upon its face plain and without ambiguity. It is so clear and explicit in its terms as not to require extrinsic evidence in aid of its interpretation. Nor was such aid invoked or sought by any of the parties to this action. All parties stand upon the agreement, and as it is "so nominated in the bond," they expect to have their rights determined.

It is thus "nominated" in the contract: "In consideration of the premises and of said payment, the party of the first part [the Santa Fe Street Railway Company], for itself, its heirs and successors, covenants and agrees to and with Samuel Schutz, his heirs, executors and administrators, that during one-half of the period named in the charter, the street railway aforesaid shall be kept, maintained and operated in good faith throughout the entire line aforesaid and not abandoned or removed, or any part thereof. . . . And in addition to the foregoing covenants and agreements, the faithful observance of which constitutes a material part of the consideration for the payment of said $2,000, the party of the first part, for itself, its assigns and successors, agrees that in the event of the failure to so keep, maintain or operate as aforesaid from any cause, the sum aforesaid, to wit, $3,481.07, with lawful interest from the failure aforesaid, shall be paid to said Samuel Schutz; and in order to further secure the payment thereof, the party of the first part, for itself, its heirs and successors, gives and grants to said Samuel Schutz, his heirs, assigns, executors and administrators, a lien upon all property, real and personal, or mixed, together with its franchise, rights and privileges of every sort, including its right of way. . . . And in event of a breach of the covenants and agreements by the party of the first part, or its assigns, successors or privies, said Samuel Schutz, his heirs, executors, administrators and assigns, may, in addition to any other remedies by him or them, sue to foreclose the aforesaid lien for the amount last aforesaid, interest and costs and such reasonable attorney's fees as the court may allow," which shows upon its face that, as to plaintiff, it was an *executed* agreement, and, as to the railway company, an *executory* one.

Should, then, the agreement on the part of the street railway company to pay Samuel Schutz the sum of $3,481.07 in the event of its

failure to perform its contract, be construed as one for the payment of liquidated damages, or as merely a penalty, upon which no recovery can be had, unless actual damages for the breach are alleged and proven?

When a contract is reduced to writing, the language of the instrument, when its meaning is clear and obvious, is the best evidence of the intention of the parties. It is their intention courts seek to determine and enforce; and when it can be done, such construction will be given as will give effect to the intention of the parties as gathered from the words used in the writing. The law presumes that a person meant what his language, by its terms, under the circumstances which it was used, would be fairly understood to mean, and this presumption can not be rebutted by proof that he intended something different, which he did not express, and which a person dealing with him neither understood nor had reason to understand. Therefore a plain written contract must be construed according to its terms, whatever may be the result of such construction. Whether it is foolish or not for parties to contract to pay liquidated damages is of no consequence, for the contract must govern if the intention be clear. Yetter v. Hudson, 57 Texas, 613; Book 3, Texas Notes, 186.

While the law permits parties to determine, by an agreement which enters into a contract, what shall be the damages which he who violates it shall pay to the other, it does not always sanction or enforce the stipulation they may make on the subject. This, we think, is not through a failure of the law to sanction or give effect to the intention of the parties as gathered from the instrument (Copeland v. Holloman, 57 S. W. Rep., 257), but because it determines from the very nature of the contract that it was not the intention of the parties to fix the amount of the damages by the stipulation. The general rule is that courts are guided by the intention of the parties in determining whether the sum contracted to be paid upon the nonperformance of a covenant is to be construed as liquidated damages, to be enforced according to the terms of the agreement, or as a penalty to be controlled by an assessment of damages by the jury (Durst v. Smith, 11 Texas, 281; Book 1, Texas Notes, 422; Yetter v. Hudson, 57 Texas, 604); and in ascertaining the intentions of the contracting parties, the ordinary rules of construction are applied. But where the contract provides for the payment of a certain sum as liquidated damages in the event of the nonperformance of a specific act which may produce damages of an uncertain character, and no language is used that such damages shall be considered only as a penalty, such sum is liquidated damages. Tobler v. Austin, 22 Texas Civ. App., 100; 53 S. W. Rep., 706.

It is said by Chief Justice Gaines, in Collier v. Betterton, 87 Texas, 440; 29 S. W. Rep., 468: "It would seem that, if the express intention of the parties to a contract should govern in every case, when they say that a certain sum shall be paid as liquidated damages in case of its breach, it should be construed as fixing the amount of a recovery; and yet, . . . notwithstanding such provision, in certain cases the damages may be limited to just compensation for the loss which has been suffered. Therefore, the principle would seem to be that, although a sum may be named as liquidated damages, the courts will not so treat it, un-

less it bear such proportion to the actual damages that it may reasonably be presumed to have been arrived at upon a fair estimation of the parties of the compensation to be paid for the prospective loss. If the supposed stipulation greatly exceed the actual loss—if there be no approximation between them, and this may be made to appear by the evidence—then, it seems to us, and then only, should the actual damages be the measure of the recovery." Halff v. O'Connor, 14 Texas Civ. App., 191; 37 S. W. Rep., 239.

It is true that, in the case under consideration, the sum to be paid by the street railway is not eo nomine called "liquidated damages"; but this makes no difference if it otherwise appears from the terms and nature of the contract that such damages were intended by the parties.

It is seen that the very terms of the contract provide that, in the event of its breach, the street railway company shall pay Schutz $3,481.07; not only this, but it stipulates for interest on that sum from the date of its breach, and provides security for the payment of *that amount* with interest and attorney's fees added to it; the damages, from the nature of the contract, are as uncertain and indeterminate as they well could be from the breach of any kind of contract; the sum is payable for one breach of the contract (see 3 Pars. on Cont., 9th ed., p. 174); the amount stipulated is equal to the aggregate sum invested by plaintiff in the enterprise and paid in cash to the street railway company.

Thus it is seen that all the criteria are present in the agreement under consideration that differentiates the sum of money to be paid in the event of its breach from a penalty, and stamps upon the amount the character of liquidated damages.

The question as to whether or not the damages are uncertain is to be determined from the standpoint of the parties at the time the contract is made, and not when a breach of it actually occurs. A contract does not change with the mutations of time, nor is it altered by subsequent events, but remains always the same contract that it was when first entered into. He would have been imbued with the gift of prophecy to have foretold, when this *contract* was made, what would be the amount of damages following from its breach. They might have exceeded the amount stipulated, or they might have fallen far below it. Nor could it have been foreseen that the damages would have been greater for a breach at one period of the existence of the contract than at another. In other words, it could not have been told when the contract was made what the damages would be if breached by the Santa Fe Street Railway Company, when one-half of the period of time it was to run should have expired. The damages *then* might have been, for aught it could have been seen by the parties, greater than the amount fixed by the contract, or it might have been less. No one could see, with the lights the parties had to guide them when the contract was made, what the damages would be. Nor, despite the fact that the electric street railway is now maintained and operated along a portion of the abandoned Santa Fe line, can anyone say what damages yet may accrue to the plaintiff by the abandonment and failure of the Santa Fe Company to maintain and operate its railway for the balance of the period covered by the contract.

But if, in the absence of the lien provided to secure the performance of the contract, anyone could have reasonable doubt as to the sum stipulated to be paid in event of its breach being liquidated damages, such doubt would, in our opinion, be dispelled by the presence of the language in the agreement which created the lien. This lien, which is in the nature of, and is in fact, a mortgage on all the company's property, is to secure the specific amount, with interest thereon stipulated and attorney's fees, mentioned in the contract. This is a clear negation of the idea that the $3,481.07 which the Santa Fe Company obligated itself, its successors and assigns to pay in the event of a breach of the contract, was intended by the parties merely as a penalty. The mortgage was given to secure a *specific* and *certain* sum; not such an amount as it might have been shown the plaintiff would have sustained as actual damages upon the failure of the Santa Fe Street Railway Company to discharge its agreement, which would be the case if the sum specified should be construed as a penalty instead of liquidated damages. Had the sum stipulated been treated and sued on as a penalty by the plaintiff, the purchasers of the property upon which the lien was given might well say: "We bought the property with notice only of a lien upon it to secure the specific amount of money mentioned in the contract; the property in our hands is chargeable only with a stipulated amount, and no such sum as the evidence may show to plaintiff was actually damaged by reason of our vendor's breach of a contract, and the property in our hands can only be adjudged subject to the lien (and no other) which the record of the contract gave us notice of when we purchased it."

What we have said, in our judgment, effectually disposes of the first two contentions stated by us as made by appellants under their assignments of error adversely to them.

We can not, however, subscribe to the third contention, as stated, of appellants. Let it, however, be conceded pro hac vice that the provision in the contract regarding the keeping, maintaining and operating of the entire line of the Santa Fe Street Railway Company is, in connection with the stipulation of the payment of the $3,481.07, a covenant running with the property of said street railway company and binding only upon the party who might be guilty of a breach of the contract, still it can not be said that there was no evidence that the covenant was broken by said company. On the contrary, it not only clearly appears from the undisputed evidence that the covenant was broken by said company, but also that there was an absolute failure on its part to maintain and operate its railway for the period of time it agreed to by its contract. Besides, the evidence shows that there were no assigns or successors of its franchise to maintain and operate said street railway; that it abandoned the operation of its road of its own volition, and permitted another party to take up and destroy its railway track; another company, having no connection with it, either as its successor or assignee, is maintaining and operating an electric street railway line along a track laid on a great part of the company's right of way. Therefore, there is no other party to hold liable for a breach of the covenant than the Santa Fe Street Railway Company.

No argument is needed to show the fallacy of appellants' fourth and last contention. The very terms of the contract completely negative the idea that the company was only obligated to maintain and operate the street railway any twenty-five years of the fifty years covered by its charter. The maintenance and operation of the line of street railway was, with the exception of certain contingencies provided for, to be continuous; and it can not be doubted that it was to continue from the time the contract was executed until one-half of the period (twenty-five years) of the existence of the company's charter should expire.

There is, however, an error in the charge, though not assigned, which it may be proper for us to notice. The charge requires the jury to find 10 percent upon the $3,481.07, with interest added thereto, as attorney's fees. It will be observed from the contract that it only provides for "such reasonable attorney's fees as the court may allow." There was no evidence introduced that 10 percent upon the amount, with interest added, was reasonable attorney's fees. It was, however, admitted upon the trial by the parties that $391.61 would be reasonable attorney's fees to be allowed plaintiff in the event he was entitled to recover; and as the verdict shows that such sum was all that was allowed by the jury as such fees, and only such amount was entered in the judgment, the error in the charge is immaterial, and in no way affects the judgment appealed from.

We believe that we have discussed and disposed of, in what we have said, every question raised and insisted upon by appellants' assignments of error, and that we have demonstrated that none of the assignments is well taken. Therefore, the judgment of the district court is affirmed.

*Affirmed.*

Writ of error refused.