## G. W. McMillan v. First National Bank of Bowie et al.

### Decided May 15, 1909.

**1.—Contract—Sale of Land—Forfeit.**

The term "forfeiture" when used in a contract does not necessarily exclude a purpose to make the sum named a penalty to which the parties may resort for the recovery of the actual damages resulting from a breach of the contract. Contract for the sale of land considered, and held not to evidence as matter of law an intention by the parties to make the sum named and deposited liquidated damages rather than a penalty, although the word "forfeit" was used.

**2.—Vendor and Vendee—Abstract of Title—Release of Vendor's Lien.**

When a vendor had agreed to furnish an abstract showing good title in himself, and it appeared from the abstract of title that two vendor's lien notes executed by a remote vendee had never been formally released, it was error for the trial court, under the circumstances of this case to refuse to permit the vendor to testify that it was not customary at the time the said notes were executed to execute releases therefor when paid, the contention of the vendor being that the notes had in fact been paid.

**3.—Same—Contract of Sale—Evidence of Title.**

When a contract for the sale of land did not specifically provide that the vendee had the right to demand an abstract which in and of itself evidenced a good title in the vendor, it was error for the trial court in an action to enforce the contract to charge the jury that the abstract itself must evidence all the facts necessary to constitute a good title in the vendor. An abstract of title is merely a summary of the documents and facts of record which affect the title. Parol proof may sometimes be resorted to for the purpose of explaining or supplying apparent defects in a record title.

**4.—Contract of Sale—Compliance by Vendor.**

A contract for the sale of land provided that in the event any debts should appear against the land, the vendee should assume the same, but he should not be thereby compelled to pay more than the agreed consideration nor should he pay the same any sooner than the time agreed upon; and it appearing from the abstract of title that two vendor's lien notes executed by a remote vendee had never been formally released, an offer by the vendor to permit the vendee to deduct from the cash payment the amount of said outstanding notes, obviated any reasonable objection to the title because of said outstanding notes, and the vendor could not be required to incorporate in the deed the provision about the vendee assuming any debt against the land.

Appeal from the County Court of Montague County. Tried below before Hon. Geo. S. March.

*Speer & Weldon,* for appellant.

*M. S. James,* for appellees.

CONNER, CHIEF JUSTICE.—This suit was instituted by appellant against appellees C. C. Hawthorne and W. A. Hawthorne, and the First National Bank of Bowie as a stakeholder, to recover upon a certain contract for the sale of land entered into between the appellant and the appellees, C. C. and W. A. Hawthorne. The contract was dated on the 29th day of July, 1907, and it was therein agreed that appellant, who was the owner of the land therein described, would sell to the appellees Hawthorne about four hundred and eighty-four and one-half acres of land, for which the Hawthornes agreed to pay twenty dollars per acre, one-fourth to be paid in cash "when good deed or deeds are executed by the proper party, and the title is shown to be good in said party to same;" and for the balance the Hawthornes were to execute five notes of equal amount, payable annually on the first day of January, 1909, and following years until all were paid. The contract also provided that "in the event there is now any debts against said land, or any debts against said land at the time of the completion of this contract, then the said parties of the second part (the Hawthornes) shall assume the same, but they will not be compelled to pay said consideration sooner than above agreed upon, nor any more than the said twenty dollars per acre." It was further agreed that appellant on his part and the Hawthornes on their part should "put up a forfeiture of five hundred dollars, . . . to be paid over" to appellant or to the Hawthornes, as the case might be, "in event" there was a failure to comply with the contract on one side and compliance therewith on the other. The particular wording of the contract relating to the Hawthornes was that said amount of five hundred dollars was to be forfeited to appellant "in the event the said parties of the second part failed to comply with said contract after party of the first part (M'cMillan) has furnished abstract of title to said land and made good and sufficient deed or deeds to same."

Appellant alleged that the deposits had been made as provided in the contract, that he had complied with his part thereof, and that the appellees Hawthorne had breached the contract on their part. The Hawthornes answered, among other things, to the effect that appellant had failed to comply with his part of the contract in offering a good title, and they in turn pleaded over against him for the recovery of the five hundred dollars which had been deposited by appellant pursuant to the terms of the agreement, and the trial resulted in a judgment in their favor.

We will not undertake to dispose of the assignments in their order, but think it sufficient to say in a general way that the court in his rulings on exceptions to pleadings, on the introduction of evidence, and in his charges, proceeded upon the theory that the contract constituted the sums deposited with the bank liquidated damages in event of a breach of the contract. In this we think there was error. It was not so expressly provided in the contract, and appellant sought to show by an answer stricken out on exception that such was not the intention of the parties. While it is generally the duty of the court to construe the legal effect of an instrument, the term "forfeiture" does not

necessarily exclude a purpose to make the sum named a penalty merely to which the parties may resort for the recovery of the actual damages resulting to the injured party by the breach of the contract. See Eakin v. Scott, 70 Texas, 442; Wright v. Dobie, 3 Texas Civ. App., 194; Farrar v. Beeman, 63 Texas, 176. The court, therefore, should not have assumed, as he did, that the measure of recovery in favor of the respective parties was as a matter of law the stated amount of the forfeit named in the contract for his protection. It should at least have been left for the jury to determine under appropriate instructions whether the named forfeit was intended by the parties to the contract as liquidated damages or as only a penalty, and in the latter event to find in favor of the successful party his actual damage, if any had been properly pleaded and proven.

The defect of title upon which appellees C. C. and W. A. Hawthorne relied was that the abstract furnished by appellant evidenced the fact that two notes for the sum of one hundred and sixty dollars each had been executed by one of the remote vendees on December 16, 1880, which reserved the vendor's lien, and that no release of said lien had been shown. Appellant insisted, among other things, that the notes had been paid, and in part relied upon his actual possession and the length of time intervening between the date of the notes and the time of furnishing the abstract. We think, therefore, that he should have been permitted to testify, as he sought to do, that it was not customary at the time the notes referred to were executed to execute releases therefor when paid. Of course, custom can not vary the law or the contract, but we think it is relevant as a circumstance tending to weaken or rebut an inference of nonpayment arising from the fact that no release appeared of record.

We think, too, under the admissions of the parties, that the court's charge is further subject to criticism. It was in effect admitted that appellant showed good title to the land he had contracted to sell save only the outstanding notes and lien above mentioned. These were clearly shown by the abstract, and we see, therefore, no necessity for the court to have given the extended definitions that he did, particularly in the sixth paragraph; and it seems clearly erroneous to have charged, as the court did, in effect in more than one instance, that the abstract itself must evidence all of the facts necessary to constitute good title in appellant. An abstract of title is a written or printed, short, methodical summary of the documents and facts of record which affect the title to land that may be in question, and it was not specifically provided in the contract under consideration that appellees had the right to demand an abstract which within and of itself evidenced a good title. It is not true that parol proof is in no event to be resorted to for the purpose of explaining or supplying apparent defects in the record title, else many titles of the most conclusive and satisfying nature would be held not "good." See Hollifield v. Landrum, 31 Texas Civ. App., 187; Loring v. Oxford, 18 Texas Civ. App., 415.

The seventh paragraph of the court's charge seems also subject to objection as urged in the eleventh assignment of error. In fact, the charge made it incumbent upon appellant to tender appellees deeds in

which provision was made for the assumption of any outstanding indebtedness that the abstract might show. The contract did not specifically so require, and the charge seems to exclude the issues appellant tendered of the payment of the notes forming the basis of appellees' objection, and an alleged offer on his part to deduct from the cash payment the amount due on the notes. It must certainly be true if appellees were afforded an opportunity to deduct from the cash payment required of them under the contract the amount due upon the outstanding notes, they thereafter could urge no reasonable objection to the title offered. In such event, at least, appellant could not be said to have breached his part of the contract merely because the deeds tendered by him did not contain the provision indicated by the court's charge.

We conclude that the judgment must be reversed and the cause remanded for a new trial, and it is so ordered.

*Reversed and remanded.*