## BOURLAND et al. v. HUFFHINES.
### (No. 2015.)

(Court of Civil Appeals of Texas. Amarillo. Oct. 25, 1922. Rehearing Denied Nov. 15, 1922.)

1. Damages ⬅83—Whether provision is for penalty or liquidated damages for the court.

Whether a stipulation in a contract is to be considered as a penalty or as liquidated damages is a question of law for the court.

2. Specific performance ⬅58 — Provision for liquidated damages does not bar specific performance.

Though there is a definite agreement for damages fixed by the parties to a contract, the injured party may nevertheless elect and at his option maintain a suit for specific performance.

3. Specific performance ⬅117—Allegations of legal fraud held sufficient to permit introduction of evidence as to understanding of contract.

Allegations in answer in suit for specific performance of contract for the sale of land that defendant was unacquainted with legal terms and the force and effect of the language used, and that he would not have executed the contract if its legal effect had been explained to him as plaintiff contended, was sufficient to show legal fraud and entitled defendant to introduce evidence as to the understanding of the parties at and before the signing of the contract.

4. Contracts ⬅94(7)—Contract not binding in equity where one party was induced by misstatements as to legal effect of contract.

Though statements by an attorney of a party to the contract were made in good faith, if he was mistaken as to the legal effect of the language used in framing the contract, it would amount to fraud in law if such statements induced the other party to act relying upon their correctness, and the contract under such circumstances would not be binding in equity.

5. Evidence ⬅461(1)—Evidence of conversation and surroundings of the parties admissible to explain ambiguous contract.

Where the issue is whether the stipulation in the contract is one for liquidated damages or

a penalty, and the intent of the parties is not clear from the language of the instrument, evidence of the facts and circumstances attending the execution of the contract and the conversation and the surroundings of the parties at the time may be looked to in ascertaining what the real intention was and what meaning should be given to the words.

6. Evidence ⬅506—Validity of title for the court.

Validity of the title to land is a question of law for the court; hence evidence as to the opinion of the attorney of a purchaser as to the validity of the title was inadmissible.

7. Specific performance ⬅120—Evidence as to attorney's opinion of title held admissible to show that purchaser accepted title.

In a suit for specific performance of a contract to sell land, evidence that the purchaser's attorney reported the defects in the title to the vendor, and that the vendor corrected them, after which the title was passed by the attorney, was admissible to establish the vendor's contention that the objection to the contract had been cured, and that the purchaser had accepted the title and waived any objection thereto.

8. Trial ⬅255(4)—Adverse party must request testimony to be limited.

Where testimony is admissible for one reason and inadmissible for another, if the adverse party desires to have the testimony limited, he must request the court to do so.

9. Evidence ⬅123(2)—Letter from purchaser to vendor held admissible as part of the res gestæ.

In suit for specific performance of contract for the sale of land, a letter by the purchaser to the vendor reminding the latter of his promise to furnish an abstract title and his failure to comply with the promise, though more than five months had elapsed since the date of the contract, and further stating that he had received no word of explanation for the unreasonable delay, and that he had concluded to call the deal off, was admissible as part of the res gestæ.

10. Principal and agent ⬅171(9) — Suit on contract signed by agent held ratification of agent's act.

In principal's action on contract signed by agent, allegation or proof that the contract was made under the authority of the principal or that he had ratified the contract was unnecessary, as the suit was a sufficient ratification of the agent's act.

11. Specific performance ⬅114(4) — Plaintiff must allege and prove performance or tender of performance on his part.

In suits for specific performance of a contract, plaintiff must allege and prove performance or tender of performance of its terms upon his part, and that defendant is estopped or has waived performance.

12. Vendor and purchaser ⬅140—Abstract not brought down to date does not show merchantable title.

An abstract of title not brought down to the date fixed for closing the deal does not show a merchantable title.

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes.

**13. Vendor and purchaser ⊙⇒143—Defects not pointed out by attorney authorized to pass upon title are waived.**

Where the purchaser authorized an attorney to examine the abstracts and pass upon the title, all defects not pointed out by the attorney are waived.

**14. Vendor and purchaser ⊙⇒141 — Provision requiring objections to title to be in writing held waived where vendor undertook to cure defects orally pointed out.**

Where the vendor undertook to cure the defects in the title verbally pointed out by the purchaser's attorney, he waived the stipulation in the contract requiring objections to the title to be stated in writing.

**15. Attorney and client ⊙⇒77—Attorney held to act as agent for vendor in preparing deed in absence of showing to contrary.**

That an attorney was authorized by the purchaser to examine the abstracts and pass on the title does not authorize him to prepare or even pass on the sufficiency of the deed, as the law makes it the duty of the vendor to prepare and tender a deed in accordance with the terms of the contract, and, in the absence of a showing that the attorney prepared the deed on request of the purchaser, he will be held to have acted in doing so as the agent of the vendor.

**16. Specific performance ⊙⇒96—Joint conveyance pursuant to contract by plaintiff alone held not to entitle him to specific performance.**

Where the contract for the sale of land provided for a warranty of title to all the land from the vendor named in the contract, a conveyance executed by the vendor and a joint owner did not entitle the vendor to a specific performance.

**17. Specific performance ⊙⇒128(3)—Judgment for full purchase price erroneous where vendor had not paid all indebtedness on the land.**

A judgment for plaintiff for the full purchase price in a suit for the specific performance of a contract to purchase land was erroneous where plaintiff had not discharged all the indebtedness against the land, as a payment to plaintiff would not be a satisfaction of the indebtedness.

Appeal from District Court, Deaf Smith County; Reese Tatum, Judge.

Suit by C. C. Huffhines against W. S. Bourland and another. Judgment for plaintiff, and defendants appeal. Reversed and remanded.

Bonner, Storey & Storey, of Vernon, and Turner & Dooley, of Amarillo, for appellants. W. H. Russell, of Hereford, for appellee.

HALL, J. On the 19th day of August, 1920, the appellant, as the proposed purchaser of certain real estate, entered into a written contract with C. C. Huffhines, through the latter's agent, E. A. Johnson, which contains the following material stipulations:

"In consideration of the sum of $25.00 per acre, to be paid as herein stated, the first party (Huffhines) agrees to sell, and second party agrees to purchase, all of sections Nos. 99 and 100, in block M–7, Castro county, Texas.

"The sum of $9,000.00 to be paid in cash when deal is consummated. The sum of $1,000.00 of said cash payment is hereby made and is deposited in escrow in the First State Bank & Trust Company of Hereford, Texas, at which place this deal is to be closed, and said $1,000.00 to be delivered to first (party) when the deal is closed, but in case first party complies with all the terms of this contract and if second party fails or refuses to comply on his part, then said $1,000.00 shall be paid to first party as agreed liquidated damages. The balance of said consideration to be paid as follows: Second party to assume the now existing indebtedness against said land, amounting to about $5,000.00, the same to be deducted from the purchase price going to first party, and the balance due first party to be evidenced by second party's five promissory notes of equal amounts of even date with deed and due in one, two, three, four, and five years from date of deed, and all drawing 8 per cent. interest, the interest payable annually and notes to provide for the usual maturing and attorney's fees clauses.

"The first party shall furnish to second party an abstract of title showing a merchantable title in himself, clear of liens save such as assumed and first party to pay all taxes for 1920, and second party to have said abstract examined and report any defects in writing and first party to have a reasonable time to cure such defects.

"This deal to be closed at any time that first party is able to give possession of said premises, but first party agrees to give second party thirty days' notice of the time in which he can deliver possession, and second party shall have thirty days from the receipt of such notice to make his arrangements for consummating this contract and the same to be executed by first party executing and delivering a proper warranty deed, at which time second party shall make such cash payments and execute and deliver said notes."

The sale was never completed, and Huffhines instituted this suit for specific performance, making the First State Bank & Trust Company of Hereford a party defendant, because the said $1,000 had been deposited with the contract in the bank. A trial before a jury resulted in a verdict in favor of appellee, decreeing specific performance, requiring him to take the land and pay the purchase price and execute the notes as provided in the contract within 30 days from the date of judgment, and decreeing in the alternative that appellee should have judgment for the full purchase price of $33,290, together with interest and costs; that the $1,000 deposited in the bank be applied as a cash payment and foreclosing the vendor's lien upon the lands. In response to special issues the jury found: (1) That Bourland requested Ed Johnson to deliver

---

⊙⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

the abstracts of title to the land in controversy to Dave Thompson; (2) that Dave Thompson instructed Johnson to deliver the abstracts to Rolason; (3) that Rolason examined the abstracts; and (4) that Dave Thompson requested Rolason to examine the abstracts and pass upon the title. It appears that Dave Thompson is the son-in-law of Bourland and resided at Hereford; that Bourland himself resided in Wilbarger county; and that F. T. Rolason is an attorney residing in Hereford.

[1] The appellant excepted to the plaintiff's petition because it appeared therefrom that the $1,000 deposited in the bank should be paid to the first party as agreed liquidated damages in the event Bourland "fails or refuses to comply with his part of the contract, and that such provision precluded appellee from maintaining an action for specific performance; that the effect of such stipulation in the contract was to give Bourland the right to elect whether he should complete the purchase or permit appellee to take the $1,000 as agreed liquidated damages in lieu of performance and to necessarily restrict appellee to a suit for the recovery of the $1,000 alone. The court overruled this exception, and such ruling is made the ground of the first assignment and proposition thereunder. The general rule is that whether such a stipulation in a contract is to be considered as a penalty or as liquidated damages is a question of law for the court. Kollaer v. Puckett (Tex. Civ. App.) 232 S. W. 914; Farrar v. Beeman, 63 Tex. 175; Gillespie v. Williams (Tex. Civ. App.) 179 S. W. 1101. No evidence was admitted throwing any light upon the question, and we must therefore determine from the face of the contract whether there is any merit in appellant's contention. The contract is before us with the amount of damages clearly expressed. The real amount of actual damages recoverable under it would be difficult to measure, and, so far as we are concerned, we are unable to determine that the sum named is unreasonable. It is said in 17 C. J. 956, § 254:

"The actual damages arising from the breach of a contract for the purchase or sale of real estate have been frequently held to be of such an uncertain and unreasonable nature as to warrant the construction that a sum named to be paid on a breach is liquidated damages, and not a penalty. If, however, the damages are readily ascertainable, the provision will be construed as for a penalty. Where it is stipulated that as a part of the consideration the purchaser shall perform a specific act or in default pay a stated sum of money, the latter is generally held to be liquidated damages rather than a penalty."

There are no alternative agreements in the contract under consideration. The provision is that, if Bourland failed or refused to complete the deal, the $1,000 in the bank

should be forfeited, and such provision is not collateral in its character, but under the provisions of the contract is within the terms of the rule stated in 17 C. J. 948, § 242, as follows:

"An actual deposit by a party to a contract pursuant to a provision thereof and a stipulation that the amount shall be paid to or retained by the other party in case of default is held as a rule to import an intent to liquidate damages and will be so enforced."

As sustaining the text the writer cites Yetter v. Hudson, 57 Tex. 604; Reinhardt v. Borders (Tex. Civ. App.) 184 S. W. 791; Goshorn v. Daniel (Tex. Civ. App.) 169 S. W. 1071; Miller v. Schmidt, 28 Tex. Civ. App. 386, 67 S. W. 429; Thorpe v. Lee, 25 Tex. Civ. App. 439, 62 S. W. 93. We find that the decisions of the various Courts of Civil Appeals in this state upon this question are hopelessly irreconcilable, and after as full an investigation as we have been able to make of the holdings by our Supreme Court the correct rule to be announced in this case is in considerable doubt, which we think accounts for the act of the Supreme Court in recently granting a writ of error in the case of Wall v. Texlouana Pro. & Ref. Co. (Tex. Civ. App.) 241 S. W. 521, where the matter was discussed by Chief Justice Huff.

"In general, where the contract is for the performance or nonperformance of some act other than the payment of money, and there is no certain measure of the injury which will be sustained from a violation of the agreement, the parties may, by an express clause inserted for that purpose, fix upon a sum in the nature of liquidated damages which shall be payable as compensation for such violation." 1 Pomeroy's Eq. Jur. (4th Ed.) § 440.

This general principle is laid down by the author as one of the rules which should guide the courts in such an inquiry, in the following language:

"Where an agreement is for the performance or nonperformance of only one act, and there is no adequate means of ascertaining the precise damage which may result from a violation, the parties may, if they please, by a separate clause of the contract, fix upon the amount of compensation payable by the defaulting party in case of a breach, and a stipulation inserted for such purpose will be treated as one for liquidated damages unless the intent be clear that it was designed to be only a penalty." Id. § 442.

The liberty accorded contracting parties to so stipulate is stated in 8 R. C. L. 559, § 110, as follows:

"As a general rule the parties to a contract may stipulate in advance as to the amount which shall be paid in compensation for loss or injury which may result in the event of a breach of the agreement; at least in those cases where the damages which would so result are not fixed by law and where the amount stipulated does

not manifestly exceed the injury which will be suffered. The damages so fixed are terms 'liquidated' or 'stipulated'; the distinction between a penalty and liquidated damages being that the one is a surety for and the other is to be paid in the event of nonperformance of the act to be done. The purpose in permitting a stipulation for damages as compensation is to render certain and definite that which appears to be uncertain and not easily susceptible of proof."

Mr. Pomeroy (section 446) says that, if the sum stipulated to be paid is a penalty, equity will not permit its payment in order to resist a suit for specific performance, and continues the discussion in section 447 as follows:

"Where, however, the parties to an agreement have added a provision for the payment in case of a breach of a certain sum which is truly liquidated damages, and not a penalty—in other words, where the contract stipulates for one of the two things in the alternative, the doing of certain acts or the payment of a certain amount of money in lieu thereof—equity will not interfere to decree a specific performance of the first alternative, but will leave the injured party to his remedy for damages at law. This is one reason, among many, why courts of equity incline strongly to construe such stipulations as providing for the penalty rather than for liquidated damages."

The case of Moss & Raley v. Wren, 102 Tex. 567, 113 S. W. 739, 120 S. W. 847, is often referred to as the leading case in this state upon the point under discussion. In all of the cases cited by Judge Gaines in the original opinion (102 Tex. 567, 113 S. W. 739) to sustain the proposition that the vendor may enforce specific performance of a contract to convey, which provides for liquidated damages in the event of default on the part of the purchaser, it appears upon investigation that such suits were brought by purchasers upon bonds for title. In the opinion upon rehearing (102 Tex. 567, 120 S. W. 847) it is held that, because the contract of sale bound the seller to accept the $1,000 as liquidated damages, an action for specific performance would not lie. A bond for title, of course, is primarily a contract looking to the ultimate conveyance of the land, and it is clear that the sum named therein is a penalty, and was not intended as security for performance, or that it should be accepted as a substitute for performance and as strictly an alternative provision for discharging the obligation at the option of the obligor. It is contended that the two opinions in the Moss Case, taken together, are authority for the proposition that, even though the contract provides for liquidated damages, yet the vendor may, at his option, sue for specific performance, unless the agreement expressly binds him to accept the forfeit in full satisfaction. It is doubtful if this contention can be sustained in the light of several holdings by the Supreme

Court, refusing writs of error in cases, since the Moss Case was decided, where a contrary holding was announced by several Courts of Civil Appeals. A writ of error was denied in the case of Carter v. Smith, 184 S. W. 244, which was a suit by the purchaser for specific performance of a contract to sell land containing this stipulation:

"If said first parties are able to show good and merchantable title, as aforesaid, in them to the lands herein described, the said second party agrees to pay the said first party upon the execution and delivery of the said deed to him, as aforesaid, the further sum of $3,500 cash, and to execute his notes for the balance of the purchase money as above provided; and in the event said second party fails or refuses to perform the terms of this contract by the payment of the purchase money, as above provided for, in money and notes, without default of the party of the first part, as above defined, then said second party shall as a full penalty and liquidated damages for his breach of this contract forfeit to first party the first payment of $500 this day made upon the land herein contracted for."

After quoting from the case of Redwine v. Hudman, 104 Tex. 21, 133 S. W. 428, a rule therein quoted from Fry on Spec. Per. § 115, the applicability of which to that case we doubt, Rasbury, Justice, said:

"We conclude, in the light of the rule stated, the contract was alternative, and gave the appellant the choice of two courses, a compliance with either of which would relieve him of all liability. Giving to the language of the contract its ordinary meaning, appellant's obligation was, if appellees title was good, to accept the land upon the agreed terms. Or he could, title being good and appellees without default, breach or fail or refuse to perform the contract. The contract expressly provides that, if appellant fails or refuses to perform, he shall forfeit to appellees the $500 deposited by him. For what purpose? The contract itself furnishes the answer when it declares it shall be the agreed or liquidated damages for the breach of the contract. In short, its breach is permitted by forfeiting the $500. The contract provides as much. This conclusion is sustained by the further provisions that the $500 shall, if forfeited, be 'full penalty and liquidated damages' for such 'breach' thereof. While the word penalty is descriptive merely of the sum agreed upon, the term 'liquidated damages' means, in connection with penalty, that said sum was ascertained and fixed as fair compensation for appellees in the event appellant elected or chose to breach or recede from the contract."

In the case of Simpson v. Eardley (Tex. Civ. App.) 137 S. W. 378, in which the Supreme Court also refused a writ of error, the contract provided:

"It is agreed that, should said title be approved by the attorneys for the parties of the second part, and they fail or refuse to comply with the terms of this contract, then said sum of $1,000 earnest money shall be forfeited to

the parties of the first part and treated as liquidated damages."

The right of the purchaser to refuse to take the land and forfeit the $1,000 was the question upon which the broker's right to commissions turned, and in disposing of it as the only issue in the case Judge James said in part:

"The case of Moss & Raley v. Wren, 102 Tex. 567, 120 S. W. 847, appears to us to be decisive of the question. Appellant seeks to differentiate this from the case just cited, in this: That there is nothing in the contract (in this case) showing that the seller must accept such sum (the $1,000) in lieu of his right to specifically enforce the contract. It is clear that defendant, in case of an arbitrary refusal on the part of Bell & Robinson to take the land, was cut off from any right to insist on performance by them, and had to take the $1,000 or nothing."

It is worthy of note that in the instant case, as in the Simpson Case, the $1,000 had been paid as earnest money, and the purchaser, Bourland, expressly bound himself to purchase the land.

The contract in Oswald Realty Co. v. Broussard (Tex. Civ. App.) 159 S. W. 153, provided that a draft for $10,000 be deposited in the bank upon condition that, if the purchasers should fail or refuse to comply with their part of the contract, then the money should be paid to the sellers as a forfeit from the purchasers, "resulting from their failure to faithfully comply with the terms and conditions of this contract." McMeans, Justice, held that the sale could not be specifically enforced. A writ of error was refused, but it may have been upon the ground that the $10,000 was never deposited. The appellee cites the case of Redwine v. Hudman, 104 Tex. 21, 133 S. W. 426, decided by the Supreme Court, which we think has no application to the instant case. That was a suit by Hudman, the purchaser, for specific performance of a contract to convey certain land then in litigation. He had, as part payment, delivered to Redwine's assignor (one Henderson) certain personal property, and the contract provided:

"It is further agreed and understood by and between the parties herein mentioned that, if the said party of the first part herein shall fail or refuse from any cause to execute and deliver said deed to said party of the second part, then and in that event the party of the first part shall deliver to the party of the second part said property herein conveyed to him, and in the event of his failure or inability to deliver said property then the party of the first part shall pay to the party of the second part the reasonable market value of said property."

It was urged that the contract did not bind Henderson to convey the land, but left him the right to refuse to do so and instead to return the personal property received as the consideration, or to pay its market value. The

Supreme Court disapproved this contention, and, citing the Moss Case with others, said:

"Much has been well said in the opinions of this court * * * affirming the right to specific performance of contracts for the conveyance of land which contain stipulations for the payment of sums of money, called penalties, or liquidated damages, inserted to secure the performance of the act agreed to be performed. A different class of contract is that where one of the parties is given the election to do something else in lieu of conveying the land."

Judge Williams then quotes the rule above quoted by Judge Rasbury from Fry on Specific Performance, 115, showing that the Redwine-Hudman Case has no application to the facts of the instant case. In the Redwine-Hudman Case the seller could either return the property which had been received as part consideration or pay the money. In the instant case Bourland must either close the deal or forfeit the $1,000 if Huffhines has complied with the obligations resting upon him under the contract. The Redwine Case falls within the class discussed in 8 R. C. L. 572, § 121, where it is said:

"Where an agreement is in the alternative to do one of two acts, the obligor having his election to do either but to pay a sum of money in the event he does one and not the other, the sum named will be regarded as liquidated damages, and the mere fact that the provision incidently has a tendency to make compliance with the contract more certain will not alone prevent it from being regarded as liquidated damages. The clause fixing the amount of the damages will be treated as a penalty, however, where it appears to have been inserted to secure prompt performance of the agreement or where the sum stipulated is collateral to the purposes of the contract and it is evident that it was inserted simply as security for performance."

See, also, in this connection, 17 C. J. 951, §§ 246, 247.

It must be admitted, however, that in the language above quoted Judge Williams construes the Moss Case as holding that, even though the contract provides for liquidated damages in the event of the purchaser's default, the vendor may nevertheless have specific performance. The right to specific performance was denied by the Commission of Appeals in Bergstedt v. Bender, 222 S. W. 547, because the contract provided that in the event of the purchaser's default the seller—

"shall forfeit to herself and keep the said sum of one hundred dollars ($100.00) this day paid by second party, which both parties hereby agree shall be forfeited as liquidated damages in the event of failure of second party to carry out the conditions of this contract, and thereupon both parties hereto shall be released from all liability hereunder."

In Yetter v. Hudson, 57 Tex. 604, where a party contracted to deliver cattle depositing

his note for $1,600 in the bank as "stipulated damages," in the event he should default in making such delivery by a time certain, Judge Walker, in a well-considered opinion, after a full discussion of the contract and several authorities, held that the note represented liquidated damages, and the amount thereof was recoverable. This case was cited with approval in Lipscomb v. Fuqua, 103 Tex. 585, 131 S. W. 1061, in which the contract for a sale of land provided:

"It is agreed that in the event the said T. D. Lipscomb fails or refuses to pay all of the $63,744 on or before April 3, 1906, the $5,000 now paid and the $5,000 to be paid January 10, 1906, shall be forfeited to the said W. H. Fuqua, the seller. Also any failure on the part of the said T. D. Lipscomb to turn in promptly any amounts realized from sales shall forfeit the amounts already paid and render this contract null and void."

After concluding that the agreement was an executory contract of sale, Judge Brown said:

"Whether the vendor who rescinds an executory contract for the sale of land shall return the purchase money paid depends upon the equities of each case. If it would be inequitable for such rescission to occur without restoration of money paid, then it must be restored. No equities are shown by the allegations of the petition, but it does appear that the damages which Fuqua might suffer by a breach of the contract were very uncertain, and it is not made to appear that the $10,000 was unreasonable as an estimate by the parties of such damages; therefore courts will assume that the amount agreed upon was intended to compensate Fuqua for the loss he might sustain from a breach of the contract. Bessling v. Hoyle, 1 Ct. of App. Cases, par. 288; Durst v. Swift, 11 Tex. 273; Yetter v. Hudson, 57 Tex. 604."

In the Yetter Case, supra, the note held to be liquidated damages was executed by the seller of the cattle and in the latter case of Eakin v. Scott, 70 Tex. 442, 7 S. W. 777, also a cattle selling case, the note of the purchaser for $8,000, given under practically the same circumstances and conditions, was also held to be liquidated damages, although it was said the actual damages were capable of being definitely ascertained. The Yetter Case is again cited by the Supreme Court as authority in Talkin v. Anderson, 19 S. W. 852, where $1,000 had been paid by the vendee to a third party under an agreement that, if he defaulted, it should be forfeited, and the third party should "hand it over" to the seller. A writ of error was refused in the case of Norman v. Vickery, 60 Tex. Civ. App. 449, 128 S. W. 452, where each party put up his note for $1,000 stipulating that, "if either party failed in its performance, to forfeit to the other his note," etc. The contract was one for the exchange of lands, and Bookhout, Justice, held that the notes were for stipulated damages, and not penalties.

A writ of error was refused in Reinhardt v. Borders (Tex. Civ. App.) 184 S. W. 791, being a case wherein Borders sued upon a note for $1,000, which, according to the recitals therein, "represents a forfeiture put up by said Reinhardt, in accordance with a contract of even date, etc." The mortgage given to secure the note recites:

"Said note being a forfeiture put up to guarantee delivery to title to certain property described in a contract," etc.

The supplemental contract between the parties recites that, should Reinhardt fail or refuse to deliver a good and merchantable title, "he agrees to forfeit the sum of $1,000, said amount to be paid to" Borders. The El Paso Court of Civil Appeals held the note represented agreed liquidated damages and affirmed the judgment for Borders. It will be seen from the foregoing brief review of cases, in which decisions were rendered by the Supreme Court, and in which writs of error have been refused, that the question of what constitutes a provision for stipulated damages is not settled in this state, since contracts which do not expressly bind the seller to accept the forfeit in full satisfaction, and do not provide for discharge by the payment of the forfeit money, are held to be contracts for liquidated damages; nor is it clear from the decisions what effect a stipulation for damages, in the event of a breach, will have upon the other party's right to specific performance.

[2] While the doctrine announced by Pomeroy (section 447, supra) is supported by a formidable and persuasive list of authorities, we have concluded that the weight of authority in other jurisdictions establishes the rule that, even where there is a definite agreement for damages fixed by the parties, the injured party may nevertheless elect and at his option maintain a suit for specific performance. 36 Cyc. 571; 23 Stand. Proc. 1019; 45 L. R. A. (N. S.) 52 n.; Koch v. Streuter, 218 Ill. 546, 75 N. E. 1049, 2 L. R. A. (N. S.) 210; Waterman on Specific Performance, § 22; Fry on Specific Performance, § 61.

[3] By his second proposition the appellant asserts that, the phrase "agreed liquidated damages" in the contract being a technical term and embracing language not easily understood by persons unacquainted with legal terminology, the court should have permitted the defendant to plead and prove the interpretation and understanding of the parties as to the meaning of this term as expressed by them at and before the signing of the contract, and therefore the court erred in sustaining the appellee's exception to the appellant's allegations with reference thereto. The appellant, at considerable length, pleads the understanding of the parties as to the extent of the liability of each, and that in the event of default in accordance therewith appellee should accept the $1,000 de-

posited in lieu of specific performance; that the matter was discussed in the presence of appellee's agent, Johnson, and Attorney Russell, and that he was assured that the contract as written would limit appellee's rights in event of default to the recovery of the $1,000. He states that he was unacquainted with the meaning of legal terms and the force and effect of the language used, and that he would not have executed the contract if its legal effect had been explained to him as appellee now contends. He does not allege fraud or mistake in verbis, but the language of the pleading is sufficient to show legal fraud and to entitle him to introduce the proof, as shown by his bill of exceptions. This court said in Hickernell v. Gregory (Tex. Civ. App.) 224 S. W. 691, that an allegation of facts which amounts to legal fraud is a sufficient allegation of fraud, though fraud is not alleged by name, nor set out by the pleader as a legal conclusion from the facts, and that it was not necessary to allege a fraudulent intent.

[4] The appellant does not attempt to charge actual fraud on the part of appellee or his attorney, nor is such charge necessary to entitle him to relief. If the statements alleged to have been made by appellee's attorney were made in good faith, nevertheless, if he was mistaken as to the legal effect of the language used in framing the contract, it would amount to fraud in law, and would be none the less misleading if they induced the appellant to act, relying upon their correctness, and the contract under such circumstances would not be binding in equity. Ramey v. Allison, 64 Tex. 697. And under the allegations, which are amply sufficient to admit the proof, we think the court erred in sustaining the exception and excluding the evidence. Kelley v. Ward, 94 Tex. 289, 60 S. W. 311; Norris v. Belcher Land Mortgage Co., 98 Tex. 176, 182, 82 S. W. 500, 83 S. W. 799; Lott v. Kaiser, 61 Tex. 665; Holt v. Gordon (Tex. Civ. App.) 176 S. W. 904.

[5] Where the allegations are sufficient and the issue is whether the stipulation in the contract is one for liquidated damages or a penalty, and the intent of the parties is not clear from the language of the instrument itself, evidence of the facts and circumstances attending the execution of the contract and the conversation and surroundings of the parties at the time with reference to its subject-matter may be looked to in ascertaining what the real intention was and what meaning should be given to its words. Lemp v. Armengol, 86 Tex. 691, 26 S. W. 941; Witherspoon v. Duncan, 62 Tex. Civ. App. 361, 131 S. W. 660; McMillan v. First National Bank, 56 Tex. Civ. App. 45, 119 S. W. 709; Corbin v. Booker (Tex. Civ. App.) 184 S. W. 696; Mitchell v. Porter (Tex. Civ. App.) 194 S. W. 981. We therefore sustain the second proposition.

[6] While the appellee's witness and agent,

Johnson, was on the stand, he was asked by appellee's counsel as to what action or report the attorney Rolason made upon the condition of the title, as shown by the abstract. Appellant objected for the reason that the opinion of the attorney as to the validity of the title would not be binding upon appellant, because that was a question of law to be determined by the court from the abstracts of title themselves. The objection was overruled, and the witness testified that Rolason reported the defects to witness, and that witness corrected them, after which the titles were passed by Rolason. The objection was a valid one, and the ground upon which it is based that it was a question of law for the court seems to be well settled in this state. Moser v. Tucker (Tex. Civ. App.) 195 S. W. 259; Brackenridge v. Claridge, 91 Tex. 527, 44 S. W. 819, 43 L. R. A. 593.

[7, 8] The evidence, however, was admissible to establish the appellee's contention that the objection to the abstract had been cured, and also that the allegation that appellant had accepted the title and had waived any objection, if any, to it. Being admissible for such purpose, the court did not err in admitting the evidence, and, if appellant desired to have the testimony limited, it was his duty to request the court to do so. Wilson v. Avery Co. (Tex. Civ. App.) 182 S. W. 884.

[9] On January 10, 1921, Bourland, then living at Vernon, wrote the appellee, then at Richardson, Tex., reminding the latter of his promise to furnish an abstract of title and his failure to comply with the promise though more than five months had elapsed since the date of the contract, and further stating that he had received no word of explanation for the unreasonable delay and stating that he had concluded to call the deal off, and requesting Huffhines to instruct the bank at Hereford to return the $1,000 deposited with the contract. A copy of this letter was sent to the bank. The letter was offered in evidence by appellant and objected to for the reason that it was self-serving and ex parte. This objection was sustained, and the letter excluded. We think this is error. The letter was admissible as part of the res gestæ. At that time there was no controversy between the parties. Bourland testified he did not know any abstract had been delivered to his son-in-law, Thompson, and had not authorized its delivery to him or by him to Rolason. It referred to the contract between the parties and declared the intention of the writer to proceed no further with the deal. It was a communication between the parties to the transaction. If the intention to declare the trade off, as expressed in the letter, had been made verbally to Huffhines, we think no question could arise as to its admissibility. Certain expressions in it may be construed to be self-

serving, but all of the letter was not subject to the general objection made. We think the letter is clearly admissible. Bank v. Ricketts (Tex. Civ. App.) 152 S. W. 646; Britt v. Burghart, 16 Tex. Civ. App. 78, 41 S. W. 390; Security T. & L. I. Co. v. Stuart (Tex. Civ. App.) 163 S. W. 396; Grant v. Alfalfa Lumber Co. (Tex. Civ. App.) 177 S. W. 536.

[10] Appellant insists that because the suit had been brought upon a contract signed "C. C. Huffhines, by E. A. Johnson," there being no allegation nor proof that the contract was made under the authority of Huffhines nor that he had ratified the same, the court should have given the appellant's peremptory instruction in his favor. These objections are met by the fact that the contract to which appellee's name is signed by E. A. Johnson is the instrument sued upon, and the suit is a sufficient ratification of the agent's act. Ware v. Bennett, 18 Tex. 794; Campbell v. Jenkins (Tex. Civ. App.) 34 S. W. 673; Sargent v. Barnes (Tex. Civ. App.) 159 S. W. 366.

The sixth proposition has been disposed of by what we have said in discussing appellant's first proposition.

Under the next three propositions appellant insists that the court erred in not directing a verdict in his favor because the plaintiff failed to show performance upon his part and compliance with the terms of the contract: (1) In that he never furnished an abstract showing a good and merchantable title in himself; (2) failed to show that he paid the taxes for 1920; (3) failed to tender a deed in compliance with that term of the contract; and (4) the examination of the abstracts furnished by Rolason was immaterial, since the abstracts show that the title is not merchantable.

[11] It is a well-established rule that in suits for specific performance of a contract plaintiff must allege and prove performance or tender of performance of its terms upon his part, or that the defendant is estopped or has waived such performance. As hereinbefore stated, the jury found that abstracts had been delivered to Thompson, the son-in-law of appellant, as per his request to Johnson; that they had been delivered upon request of Thompson to Rolason, who was requested by Thompson to examine them. We will take up these various contentions in the order presented:

[12] The first inquiry is: Do the abstracts show merchantable title in appellee? The abstracts do not show a merchantable title in the appellee, either on March 1 or when the case was tried. They show that he owned an undivided five-twelfths interest, and that the remaining two-twelfths was in one S. H. Slaughter. They show a deed from C. B. Slaughter as independent executor of the will of S. H. Slaughter, deceased, conveying this interest to Huffhines, Wilson, and Log-

gans, and a deed from Huffhines and Loggans to Wilson, conveying the same interest. The will of S. H. Slaughter is not shown in the abstracts, nor does it appear therefrom that the will had ever been probated. They do not show that the taxes for 1920 had been paid, and the date of the last certificate to the abstract was September 17, 1920. It is not clear from the record when the abstracts were delivered to Rolason. The parties had agreed to close the trade as soon as appellee could deliver possession of the premises, and this, it is claimed, could have been done on March 1, 1921. An abstract of title not brought down to the date fixed for closing the deal does not show a merchantable title. Gaut v. Dunlap (Tex. Civ. App.) 188 S. W. 1020; Roos v. Thigpen (Tex. Civ. App.) 140 S. W. 1180.

[13, 14] The jury having found that Rolason was appellant's attorney, authorized to examine the abstracts and pass upon the title, it follows that all defects not pointed out by him were waived. Davenport v. Sparkman (Tex. Com. App.) 208 S. W. 658; Champion v. Taylor (Tex. Civ. App.) 229 S. W. 627. By undertaking to cure the defects verbally pointed out by Rolason appellee waived the stipulation requiring the objections to the title to be stated in writing.

[15] While the jury found that Rolason was authorized to examine the abstracts and pass upon the title for Bourland, this finding cannot be extended to mean that he was also authorized to prepare or even pass upon the sufficiency of the deed. The law makes it the duty of the vendor to prepare and tender a deed in accordance with the terms of the contract. Walling v. Kinnard, 10 Tex. 508, 60 Am. Dec. 216; Patterson v. Goodrich, 3 Tex. 331; Clifton v. Charles, 53 Tex. Civ. App. 448, 116 S. W. 120; Redwine v. Hudman, 104 Tex. 21, 133 S. W. 426. In the absence of any showing that Rolason prepared the deed upon request of Bourland, he must be held to have acted in so doing as the agent of Huffhines.

[16] The contract bound Huffhines to deliver a deed reciting that Bourland assumed—

"the existing indebtedness against the land, amounting to about $5,000, the same to be deducted from the purchase price going to first party, and the balance due first party to be evidenced by second party's five promissory notes of equal amounts of even date with deed and due in one, two, three, four, and five years from date of deed, all drawing 8 per cent. interest, the interest payable annually and notes to provide for the usual maturing and attorney's fees clauses, * * * the same to be executed by first party executing and delivering a proper warranty deed, at which time second party shall make such cash payments and execute and deliver said notes."

The deed tendered was not a conveyance by appellee alone, but was the joint convey-

ance of himself and J. S. Wilson. It provided for the execution of notes payable to both grantors at a bank in Hereford, and recited:

"And further secured by deed of trust to E. A. Johnson, trustee."

This is not such a deed, of course, as the contract required Huffhines to make, and its tender did not entitle him to a decree for specific performance. Lovejoy v. Roberts, 35 Tex. 605; Gober v. Hart, 36 Tex. 139; North Texas Building Co. v. Coleman (Tex. Civ. App.) 58 S. W. 1044.

Appellant's right to a warranty of the title to all of the land from appellee is guaranteed by the contract. A conveyance executed by appellee and a joint owner would not as a matter of law bind such joint owner for the purchase price. 15 C. J. 1223, § 22.

[17] The appellant attacks certain findings by the court and set out in the judgment. One of them is that Huffhines was ready, willing, and able at all times to give appellee a merchantable title. Huffhines did not testify, and, as above shown, the finding is contrary to the record. Appellant also attacks the correctness of the judgment because it required him to accept the above-described deed and to pay the full amount of $25 per acre for the land. Huffhines would not be entitled to recover the full purchase price unless he had discharged the indebtedness against the land so as to be subrogated to the rights of the original holder, which appears by the record to be the Hartford Fire Insurance Company. A payment to Huffhines would not be a satisfaction of this indebtedness unless it were shown that he had paid it. Singletary v. Goeman, 58 Tex. Civ. App. 5, 123 S. W. 436; Hawkins v. Potter, 62 Tex. Civ. App. 126, 130 S. W. 643; Sherk v. Bank (Tex. Civ. App.) 152 S. W. 832.

For the errors pointed out, the judgment is reversed, and the cause remanded.