## CRAVEN v. ESCAJEDA. (No. 1841.)

(Court of Civil Appeals of Texas. El Paso. Jan. 21, 1926.)

1. **Vendor and purchaser ☞28—Telegrams held to constitute a contract to buy and sell lots.**

Purchaser's telegram that he had deposited in local bank part payment on lots bought and to have vendor draw on him for full amount due with deed, abstract, and papers attached, with vendor's telegram that abstract, papers, and deed would go forward in compliance therewith with instructions to bank, in view of other correspondence and action of parties, *held* to constitute unconditional offer and acceptance, and therefore a contract to buy and sell.

2. **Vendor and purchaser ☞140—Failure of purchaser to pay draft on presentation held not as matter of law to give vendor right to revoke contract; "abstract."**

Where purchaser, under contract for purchase of lots, was to pay promptly when draft for full amount due with deed, abstract, and papers were presented, and draft was presented before vendor's title was perfect of record, failure to pay draft would not as a matter of law give vendor right to revoke contract, since by use of word "abstract" it was meant that title, when brought down to date, would show of record a good title in vendor.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Abstract of Title.]

Appeal from District Court, El Paso County; Ballard Coldwell, Judge.

Suit by Ben Escajeda against Charles Stewart Craven. Judgment for plaintiff, and defendant appeals. Affirmed.

Goggin, Hunter & Brown, of El Paso, for appellant.

S. P. Weisiger and R. M. Reed, both of El Paso, for appellee.

WALTHALL, J. On March 22, 1923, Ben Escajeda, a resident of El Paso county, Tex., brought this suit against Charles Stewart Craven, a resident of Kansas City. Mo., to recover the title to and the possession of lots 5 and 6, block 66, Magoffin addition to the city of El Paso, Tex., alleging, in substance, as his ground of action, that on or about February 26, 1923, he had offered in writing to purchase said property of defendant for a consideration of $1,200 cash, which offer defendant, in writing, had accepted and agreed to sell to plaintiff, and that thereafter, on or about February 26th, defendant executed his deed conveying said property to plaintiff and forwarded same to an El Paso bank, with abstract to said property and draft for said sum with instructions to deliver said deed and abstract to plaintiff upon the payment of said draft, but that before plaintiff could investigate and abstract the title to said property defendant caused said papers to be returned to him, and has since refused to carry out his contract or to deliver said deed to plaintiff; that at the time said papers were received at said bank plaintiff found that the title to said property appeared upon the records to be in J. M. Cole, and immediately notified defendant and asked an explanation; and that defendant thereupon caused a deed from said Cole to defendant to be placed upon record, without so advising plaintiff, and, thereupon drew his draft upon plaintiff and presented same for payment, with deed, but recalled both deed and draft without giving reasonable time, and has since refused to return same. Plaintiff alleged his readiness to pay said sum, and tendered same into court.

Defendant answered by general denial, and specially pleaded that in the negotiations between plaintiff and defendant there was no meeting of their minds and no binding obligation for the sale of said property, and pleaded ownership in himself of said property, and set out the correspondence between plaintiff and defendant with reference to said alleged contract of sale.

Both parties pleaded and relied upon the correspondence by wire and by letters as stating the matters at issue as to the sale of said property. We will further state the specific points contended for by each in discussing the case.

The case was tried with a jury and submitted upon special issues. Judgment was rendered for plaintiff, and defendant prosecutes this appeal.

### Opinion.

There is no controversy as to the facts. The matters constituting the alleged contract for the sale of said property are evidenced by telegrams and letters between the parties, appellee at El Paso and appellant at Kansas City, and which, omitting the formal address and signatures, but stating the dates, it is agreed the following correspondence by wire and mail was sent and received:

February 20, 1923, appellee to appellant:

"Wire immediately lowest cash price your lots, other deals pending."

February 20, 1923, appellant to appellee:

"Will accept fourteen hundred dollars net no commissions for lots have another trade deal on for them. Wire me your acceptance."

February 20, 1923, appellee to appellant:

"My very best offer for your lots twelve hundred cash you to furnish abstract of title and all taxes paid to date. Wire your acceptance and I will immediately send hundred dollars earnest money. Must know at once account other deal pending."

February 20, 1923, appellant to appellee:

"Your offer too low will accept twelve hundred cash you to pay any taxes and completion

of abstract. I believe taxes are all paid but there may be something overlooked or unknown abstract is complete to my ownership. Wire acceptance and send earnest money for am about closing trade deal that will net me more than selling them to you at this price."

February 21, 1923, appellee to appellant:

"Will pay abstract completion but you must pay all taxes at twelve hundred cash."

February 21, 1923, appellant to appellee:

"All right will accept twelve hundred cash and pay taxes send two hundred dollars earnest money."

February 21, 1923, appellee to appellant:

"Everything Okay, sending earnest money Friday holiday to-morrow."
                    "Feb. 23, 1923.

"Mr. Ben Escajeda, City—Dear Sir: We to-day wired C. S. Craven, Kansas City, Mo., as follows: 'We hold two hundred dollars earnest money deposited by Ben Escajeda on lots 5 and 6 block 66 Magoffin at twelve hundred dollars cash send abstract and all papers to us.' We will hold the $200.00 mentioned in escrow subject to your instructions.
"[Signed] Vice Pres. City Nat. Bank."

February 23, 1923, appellant to appellee:

"Have had enough expensive experience with El Paso banks. You must send the two hundred dollars earnest money here to me as agreed and I will send you direct all papers final papers with draft attached only through bank."

February 26, 1923, appellee to appellant:

"I have deposited in City National Bank two hundred dollars part payment on lots bought from you. Draw on me for full amount due you with deed abstract and papers attached and your draft will be paid promptly. Wire answer."

February 26, 1923, appellant to appellee:

"Abstract papers and deed to you with draft attached for twelve hundred dollars will go forward tomorrow through bank here to City National Bank there thereby complying as per your telegram to-day instructions to immediately return if not promptly paid."

March 1, 1923, appellee to appellant:

"Title appears in J. M. Cole. Please wire explanation."

March 1, 1923, appellant to appellee:

"J. M. Cole transaction just an accommodation matter. I have quitclaim deed back to me and notes uncollected and all other papers ready to send to you direct upon payment of draft."

March 2, 1923, appellee to appellant:

"Will pay draft as soon as title is cleared. Please send deed to county clerk here for record. The records show some proceedings relating to will and death of Charles Stewart Craven. Wire bank to hold draft until further instructions. Letter follows to-day."

March 2, 1923, appellee to appellant (letter):

"Dear Sir: Relative to the purchase of lots 5 and 6, block 66, Magoffin addition to the city of El Paso, will say that I am willing to go ahead with the deal, but you certainly cannot expect me to pay the draft for this property until I know that I am getting a good title. The abstract you sent only comes down to 1908, and I have gone to the expense of having an abstract company to bring it down to date, and we find that in 1910 the property was conveyed by C. S. Craven, to J. M. Cole. You stated in your telegram that you have deed from Cole back to you. This deed should be placed on record for your benefit as well as any one else. So please mail it to the county clerk of El Paso county, to be filed for record and then I can have it put in the abstract. We have further found from the records where that a proceeding was had a few years ago in Dallas county, Tex., to set aside the will of Chas. Stewart Craven, and we are wondering if this man was the same person who owned these lots, and probably your father, or whether these lots have always belonged to you. Please write me what the true facts are, and I see now that it will be necessary in order to clear the title of this proceeding for you to make an affidavit showing what the facts are. This affidavit I will have prepared and sent to you when I learn what the facts are, so please write me fully in reference to this deal, and all the matters and I will be glad to go ahead and close up just as soon as I find that I am getting a good title. I am handing you a statement of the city tax collector showing the amount of taxes due which you can either pay yourself or deduct them from the draft and I will take care of them myself. Thanking you in advance for your early attention to this matter, I am, Yours very truly."

March 20, 1923, appellee to appellant:

"State National Bank holds twelve hundred dollars. Send papers to them."

March 20, 1923, State National Bank to appellant:

"Return Ben Escajeda draft for twelve hundred dollars with papers attached and same will be paid."

March 20, 1923:

"Received of Ben Escajeda twelve hundred dollars to pay C. S. Craven draft when presented.          [Signed] Geo. G. Matkin."
Across end of said receipt appears the following:  "State National Bank, El Paso, Texas."

April 11, 1923, appellant to State National Bank:

"Gentlemen: Replying to your wire of even date which reads as follows: 'Still hold twelve hundred dollars on Ben Escajeda deal awaiting deed to him advise us what you want done.' We sent to Ben Escajeda the City National Bank draft with deed attached, at his request, and advice that same would be paid promptly. He did not pay it and draft came back. We then paid city taxes and filed Q. C. deed from J. M. Cole, waited three days then sent draft

and deed again to him in care of your bank. He again let the draft with deed attached come back unpaid. After I had made other arrangements wire came from him and you to return deed and draft for the third time and it would be paid. I lost faith in Mr. Escajeda's good intentions as he had twice violated his agreement and has now brought suit against me. In further reference to this matter, kindly be guided by instructions from Col. F. E. Hunter of your city who will represent me in the matter. Very truly yours."

On the one issue submitted by the court, the jury found that the appellee sent the draft for $1,200 and deed to the land to the State National Bank. At request of appellant, the court made and filed further findings of fact and conclusions of law, and, without stating such facts in full as they are largely uncontroverted, and recite the facts as stated in the correspondence, the court held that appellee's telegram of February 26, 1923, was an offer to purchase said property upon the terms stated; and that appellant's telegram of same date in answer thereto was an acceptance of the identical offer to purchase. The court further recited, in substance, in his findings and conclusions, that by reason of the record title appearing in Cole same was not a merchantable title and did not constitute performance or tender of performance of the agreement on the part of appellant, and that the title so remained until the quitclaim deed with a proper acknowledgment from Cole to appellant was filed for record on April 12, 1923; that appellant at all times after February 26th was ready, able, and willing to perform his part of the agreement; and that at no time since the 17th day of March, 1923, had appellant tendered or offered to perform his part of the agreement to convey, but had failed and refused to do so.

It appears from the undisputed evidence that on Saturday, said 17th day of March, 1923, the State National Bank had the draft and deed with instruction to return same immediately if the draft was not promptly paid. The draft was not paid on that day, and the deed and draft were returned on that day. Without stating the verbiage of appellee's evidence, he testified that he did not pay the draft when same was sent to the City National Bank for the reason the title showed to be in Cole, and so advised appellant, and that while the deed from Cole to appellant had been filed for record previous to the 17th day of March, when the draft was with the State National Bank appellant had not advised him of such filing and he did not know that it had been filed until the 20th of March, at which time he immediately advised appellant that the State National Bank held the money to meet the draft and requested the return of the draft, and had the bank to send a similar wire.

The contentions made by appellant under the above facts are, substantially: First, that there was no unconditional acceptance of appellee's offer to buy the said lots; and, second, appellee's failure to pay the draft when presented for payment, appellee could not subsequently by a tender to pay claim compliance.

[1] We have concluded that the two telegrams of the 26th of February, as above, in connection with the other correspondence, and the action of both parties in connection therewith, constitute, respectively, an unconditional offer and an unconditional acceptance to buy and sell the property in controversy, and therefore a contract, on the part of appellee to buy, and on the part of appellant to sell, the property.

[2] While the correspondence between the parties may not disclose an unconditional offer to buy and an unconditional acceptance of the offer prior to the telegrams of the 26th day of February, 1923, we think we may look to the entire correspondence and the action of the parties to discover the intention of the parties as to when the completed transaction, in exact fairness to both, could be closed. The correspondence shows that appellant was to discharge the taxes and furnish an abstract of the title, and that appellee was to have the abstract completed to date, necessarily including the deed from Cole to appellant, with a proper acknowledgment, before it could be held that the draft for the consideration for the property was due and payable. While appellee had been advised that the Cole deed be placed of record, as was done, the evidence does not show that appellant at any time advised appellee that he would place such deed of record, and the evidence shows that he placed the deed of record without informing appellee that he had done so, and that appellee had no knowledge of its being of record until he examined the record immediately after the presentation of the draft for payment on the 17th of March. We cannot say, as a matter of law, that the failure of appellee to pay the draft when presented, under the circumstances disclosed by the record, would give the appellant the right to revoke the contract of sale on the ground that the draft was not paid on presentation. The contract as embodied in the two telegrams of February 26th was that when the draft for the full amount due with deed, abstract, and papers attached were presented, the draft would be promply paid. Now the draft was sent and presented for payment after appellant's attention had been called to his imperfect title on March 1st and 2d, by telegram and letter, and before his title was perfect of record.

It will be observed, from the above correspondence of the parties prior and subsequent to February 26th, that it was the intention of the parties that appellant was to furnish to appellee an abstract of title to the lots as far as the abstract had then been brought down, and appellee was to have the

abstract completed to date. By the use of the word "abstract" in the brief statement of the agreement, it was evidently meant that the title then reflected by the abstract and that brought down to date by appellee would, of itself, show such facts of record as to evidence good title in appellant. McMillan v. First National Bank, 56 Tex. Civ. App. 45, 119 S. W. 709; Loring v. Oxford, 18 Tex. Civ. App. 415, 45 S. W. 395; Brown v. Montgomery, 89 Tex. 250, 34 S. W. 443.

Appellant represented that the "abstract is complete to my ownership." Appellee had the right, we think, to have the abstract reflect the record title, so as to know that the abstract, brought down to date, that the title was complete in appellant. In addition to the necessity of having the Cole deed placed of record and abstracted, the record shows other minor defects of title, not necessary to discuss here, not cured at the time the draft was presented for payment. The trial court found that the title was not a merchantable title until the 12th of April. That finding is not challenged by appellant. Appellee, under the agreement, was to act promptly in paying the draft when the record was such as to show ownership of the lots in appellant. We cannot say that he did not offer to do so.

Finding no reversible error, the case is affirmed.